**Allan J. DeCASTECKER, Plaintiff,**

v.

**CASE CORPORATION, a Delaware corporation, Defendant.**

No. 94–4089.

United States District Court, C.D. Illinois.

Oct. 3, 1995.

Douglas G. Olson, Silvis, IL, for plaintiff.

Richard M. Batcher, Bozeman, Neighbour, Patton & Noe, Moline, IL, for defendant.

### *ORDER*

McDADE, District Judge.

Before the Court is Defendant Case Corporation's Motion for Summary Judgement [Doc # 34]. Defendant Case Corporation ("Case") is a corporation which operates manufacturing facilities in the Quad City area. Plaintiff Allan DeCastecker ("DeCastecker") applied for and was denied a position with Defendant. As a result, Plaintiff filed a suit based upon the Age Discrimina-

tion and Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. The Court has jurisdiction in this matter pursuant to the ADEA.

## BACKGROUND

The following facts gave rise to the present controversy and are not in dispute. The Case Corporation is a large manufacturer of agricultural and other equipment. In October 1989, Case placed an ad in a local newspaper advertising an opening for a Process Engineer II at its East Moline plant. The ad listed the responsibilities of a process engineer as including "specifications of machine tools and production equipment as well as establishing the sequence of operations, tolerances, sizes, and related items used in the manufactured products." The ad went on to state that interested applicants "should have a B.S. in mechanical engineering or related degree. Prior experience in the processing engineering field is preferred." DeCastecker applied for the Process Engineer position by submitting his resume to Case.

DeCastecker was born September 25, 1942. He graduated from high school and completed a four year tool and dye apprenticeship program, but he does not have a college degree. DeCastecker worked for Case at its Rock Island facility from 1965 until 1987. While in the employ of Case, DeCastecker had two years of experience as an assembler and more than twenty years of experience as a manufacturing tool engineer. DeCastecker also has some experience with mainframe and personal computers.

Review of the applications and the hiring decision regarding the position of Process Engineer II were conducted and made by Daryl Moore, Tom Hansen, Bob Hanna, Bob Veltling, Sr., and Jim Hamrick. Moore, manager of personnel development, prepared the newspaper ad for the process engineer position and screened the applications initially. Moore withheld any applications which did not show that the applicant had a college degree. Hansen, manager of industrial relations, also screened resumes. Hanna, manager of the process engineering department, reviewed all resumes and selected those who would be interviewed. Veltling, a senior processing engineer, consulted with Hanna in his decisions. Hamrick, manager of technical services, along with Hanna, eventually made the final decision regarding who would be hired for the process engineer position.

DeCastecker sent in his resume for the Process Engineer II position, but it was screened out by Moore on the basis that he lacked a college degree. However, DeCastecker made two phone calls to Larry Neff, a senior processing engineer and acquaintance of DeCastecker's, to inquire about the Process Engineering position for him. These calls were made in late October and early November. After the late October call, Neff recommended to Hanna that he consider DeCastecker for the Process Engineer II position but Hanna stated that no such position was available. Two weeks later, after the early November call, Neff once again inquired about the position and Hanna informed Neff that a hiring freeze was in effect until January 1, 1990. Although a hiring freeze was allegedly in effect at that time, Hanna and Hamrick decided to interview Renee Rondeau and were purportedly impressed. Accordingly, they sought and obtained an exception to the hiring freeze. Rondeau, therefore, filled the position of Process Engineer II.

DeCastecker, in response to his failed attempt to secure employment with Case, filed the present lawsuit against Case. DeCastecker's Complaint alleges that Case improperly considered age when deciding upon who to have fill the position of Process Engineer II. DeCastecker alleges that Case systematically discriminated on the basis of age against many qualified applicants including himself in violation of the ADEA and that the requirement of a college degree was no more than a smoke screen for this systematic discrimination. Case filed the present motion for summary judgment arguing that no policy to discriminate against persons 40 years of age or older existed at Case and that its requirement of a college degree for the position of Process Engineer II was merely an attempt to upgrade the educational base of its employees.

## ANALYSIS

"A motion for summary judgment is not an appropriate occasion for weighing

evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This Court must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). When faced with a motion for summary judgment, the nonmoving party may not rest on its pleadings. Rather, it is necessary for the nonmoving party to demonstrate, through specific evidence, that there remains a genuine issue of triable fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). Moreover, in an employment discrimination case, where intent is inevitably the central issue, caution is required in deciding whether to grant summary judgment. *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 370–71 (7th Cir.1992).

■ There are two essentially different frameworks through which an employee may prove that he or she was discriminated against on the basis of age: the direct, mixed-motives analysis of *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1794, 104 L.Ed.2d 268 (1989), appropriate when both legitimate and illegitimate considerations played a role in an adverse employment decision, and the indirect burden-shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), as rearticulated in *Texas Dept. of Community Affairs. v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), appropriate when either a legitimate or an illegitimate set of considerations led to the challenged decision and the plaintiff offers an insufficient amount of direct evidence to preclude summary judgment under the *Price Waterhouse* standard.

■ At some point in the proceedings, it is necessary for the district court to decide which approach Plaintiff purports to use at trial. *Randle v. LaSalle Telecommunica-*

*tions, Inc.,* 876 F.2d 563, 569 (7th Cir.1989) *citing Price Waterhouse v. Hopkins,* 490 U.S. 228, 247 n. 12, 109 S.Ct. 1775, 1788 n. 12, 104 L.Ed.2d 268 (1989). If the Court finds that the direct evidence presented is sufficient to survive a motion for summary judgment, then the indirect burden-shifting method of *McDonnell Douglas* is rendered irrelevant. *Id.,* 490 U.S. at 568, 109 S.Ct. at 2017; *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). Conversely, if there is not enough direct evidence to surpass the summary judgment stage, the Court must then employ the *McDonnell Douglas* methodology to the case. *Randle,* 876 F.2d at 570. In this way, the jury will not be overly confused by having to focus upon two different evidentiary schemes at trial. Thus, it is the Court's task here to first determine whether Plaintiff could prevail before the jury under the *Price Waterhouse* direct method of proof. Only if that method fails should the Court engage in the *McDonnell Douglas* burden-shifting analysis.

### Price Waterhouse Analysis

■ Under the *Price Waterhouse* analysis, 490 U.S. at 258, 109 S.Ct. at 1794, as applied to ADEA cases in *Visser v. Packer Engineering Assoc., Inc.,* 924 F.2d 655, 658 (7th Cir.1991) *(en banc )*, Plaintiff must present "direct evidence" to show that age discrimination was a substantial or motivating factor in the decision not to hire him. Should Plaintiff succeed in proving that age was a "substantial" or "motivating factor" in that decision, Defendant must respond by proving by a preponderance of the evidence that it would have made the same employment decision even if it had not taken the impermissible factor into account. *Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. at 1794; *Visser,* 924 F.2d at 658.

■ The Court's initial task is to define the often confusing term "direct evidence" in the context of the *Price Waterhouse* direct method of analysis. The Seventh Circuit recently had occasion to clarify this language in *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 735–36 (7th Cir.1994). In defining the evidence to be used under the direct method

of proof, the court noted that in addition to a direct acknowledgment of discriminatory intent by the defendant, "circumstantial evidence is admissible too, to provide a basis for drawing an inference of intentional discrimination." [1] *Id.* at 736. The court pointed out that there are three distinct types of circumstantial evidence of intentional discrimination: (1) evidence of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) statistical and other evidence that employees similarly situated to the plaintiff other than in the characteristic on which the employer is forbidden to base a difference in treatment received systematically better treatment; and (3) evidence that the plaintiff was qualified for the job in question but passed over in favor of a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is a mere pretext for discrimination. *Id.* (internal citations omitted).

 In support of his claim, DeCastecker offers circumstantial evidence of all three types. First, DeCastecker offers two telling reports generated by Case. In a document entitled "Outline For Department Review—9/8/88," Case lists as a specific topic for discussion the issue of Case's "Aging work force." A second document entitled "Key Position Review—1988" states, "There is a need to input some youth into the organization and begin to execute developmental plans." The document goes on to state that Case's "organization continues to age" and, under the heading "Major Management Needs and Actions," that Case needs to "[i]nput youth into the organization to prevent further skewing of our age distribution." [2] The Court finds that these company policy statements constitute sufficient circumstantial evidence of age discrimination under the direct method of proof so as to preclude summary judgment in this case. The Court finds it reasonable to infer that because Case has a discriminatory company policy against its aging workforce, it is a question of material fact whether Case discriminated in its particular decision not to hire DeCastecker. *Troupe*, 20 F.3d at 736; *Visser*, 924 F.2d at 658.

**1.** This holding that circumstantial evidence may also be admissible under the direct method of proof is further supported by the Seventh Circuit's *en banc* decision in *Visser* which held, "The proverbial smoking gun is not required, but there is no circumstantial evidence, either, that pension costs played a role in the decision to fire Visser." 924 F.2d at 658. This language arguably implies that circumstantial evidence is enough to constitute direct evidence under the *Price Waterhouse* method of analysis. *See Finnegan v. Trans World Airlines, Inc.*, 767 F.Supp. 867, 875 n. 22 (N.D.Ill.1991) (Moran, J.) *citing Visser*, 924 F.2d at 658-60 ("It appears, however, that a plaintiff who presents direct evidence of discrimination, thus falling within *Price Waterhouse*, may present circumstantial evidence as well."); *Visser*, 924 F.2d at 664 n. 1 (Cudahy, J., dissenting) ("Incidentally, one may get into mixed motive analysis by presenting either direct *or* circumstantial evidence.") (emphasis in original)

On the other hand, such a holding appears to fly in the face of the Seventh Circuit's previous holding in *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir.1989), that, "[B]y definition, direct evidence, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption ... [A] plaintiff's so-called 'direct' evidence must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." 876 F.2d at 569. Nevertheless, the Court must abide by the most recent clarification of the law by the Seventh Circuit.

**2.** Plaintiff also offers the statement of Roger Behrens who was the outgoing plant manager of Case's East Moline Plant. Plaintiff alleges that when he called Behrens to inquire about the position, Behrens first asked his age and then said that Case was hiring younger people with college degrees. Behrens also allegedly told Plaintiff not to get his hopes up because of Case's policy of hiring young applicants only. The Court finds that Behrens' statement does not support Plaintiff's claim of age discrimination. The Seventh Circuit has held that "[s]tatements made by inferior employees are not probative of an intent to discriminate by the decisionmaker." *McCarthy v. Kemper Life Ins. Co.*, 924 F.2d 683, 686-87 (7th Cir.1991); *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 233 n. 1 (7th Cir.1992) *quoting Aungst v. Westinghouse Elec. Co.*, 937 F.2d 1216, 1221 (7th Cir.1991). Thus, because DeCastecker has failed to offer evidence suggesting that Behrens was involved in the hiring decision, any statement made by Behrens fails to constitute either direct or circumstantial evidence of age discrimination.

Second, DeCastecker submits statistical evidence as direct proof of age discrimination in this case. In Exhibits 26 and 27 of his opposition to Defendant's motion for summary judgment, DeCastecker offers two graphs which depict a shift in the age distribution of Case's workforce during the period from December 1988 to October 1990. The graphs show that the age distribution in 1988 was skewed toward a more aged workforce. In October 1990, however, the age distribution of Case's workforce shifted toward a younger workforce. DeCastecker maintains that this is a result of Case's discriminatory practice of hiring younger employees only. DeCastecker also points out that in June of 1989, eight positions, including the Process Engineer II position at issue in this case, were open for new hires. DeCastecker alleges that Case received some 165 applications for these positions but did not interview, much less hire, any person over 40 years of age. DeCastecker includes the resumes and qualifications of some of these applicants. Case counters DeCastecker's allegations by noting that in an 18 month period which covered six months prior to the ad being placed for the process engineer position and 12 months following the placement of the ad, Case hired or rehired 26 salaried persons and promoted one other person. Case claims that out of the 27 positions filled during that 18 month period, 13 of the positions were filled by persons 40 years old or older.

The Court finds DeCastecker's statistical evidence to be wanting in some respects. For instance, DeCastecker's graphical analysis of the reduced age in Case's workforce does not tell the Court to what degree retirement, voluntary departures, involuntary departures, and death or sickness played a part in moving the age curve toward a younger workforce. However, the Court does find DeCastecker's statistics to be of some probative value regarding the alleged age discrimination at Case when combined with the company statements regarding its aging workforce. Thus, such statistics constitute further circumstantial evidence to show that Case may have intentionally discriminated against DeCastecker on the basis of age so as to preclude summary judgment here.

Third, DeCastecker presents evidence that he was qualified for the Process Engineer II position and that Case's refusal to review his resume because of his lack of a college degree was only a pretext for age discrimination. While it is true that the job advertisement stated, "Interested applicants should have a B.S. in Mechanical Engineering or related degree," the Court finds that Neff's and Moore's deposition testimony creates a question of disputed material fact as to whether DeCastecker was qualified for the job.

DeCastecker had contacted Neff to inquire about the Process Engineer II position for him. Neff approached Hanna about the position on two different occasions. During the first conversation, Neff informed Hanna that DeCastecker had worked for a number of years at Case's Rock Island plant. However, Hanna refused to consider DeCastecker not because DeCastecker lacked a college education, but because he did not know of an opening for a process engineer. This conversation allegedly occurred during the latter two weeks of October. Yet, the advertisement for the Process Engineer II position had been placed on October 8, 1989. Thus, it can be inferred that Hanna knew about the opening but lied about the unavailability of the position because of DeCastecker's age.

Two weeks later, when Neff inquired about the position for the second time, Hanna once again refused to consider DeCastecker, not because DeCastecker was not qualified, but because a "hiring freeze" was in effect. Yet, Hamrick and Hanna hired Renee Rondeau during the time of the alleged hiring freeze. Rondeau is 29 and the second to youngest of all 59 applicants for the job. Thus, it could be inferred that Hanna lied about the hiring freeze and rejected DeCastecker's resume not because he lacked a college degree but because of DeCastecker's age.

Moore's deposition testimony further supports the fact that DeCastecker may in fact have been qualified for the job despite the lack of a college degree. Moore testified that she did not screen out all resumes which lacked a degree in engineering. Rather, she was "more liberal with the type of degree because education may at some point also

come into play. It would need to be an equivalent combination of the degree plus experience, so if it was someone with a chemical degree but had performed engineering in the past, chances were, [Hanna] may have received that resume as well." If a chemical degree plus experience could qualify a person to be interviewed, then it is a factual question whether DeCastecker's four year tool and dye apprenticeship plus his great deal of prior experience qualified him for the position.

█ Moreover, the Process Engineer advertisement states that interested applicants "should have" a B.S. in Mechanical Engineering. By contrast, Case's advertisement for Production Supervisor states that the positions "*require* a B.A. or B.S. in engineering, business or other related field." (emphasis added). Thus, there is a factual question whether the "should have" language absolutely requires an engineering degree or merely suggests that it would be preferred. The Process Engineer II position had never previously required a college degree. Thus, the contours of the degree requirement are subject to dispute and are· not appropriate for summary judgment.[3] This final item of dispute that DeCastecker may actually have been qualified for the Process Engineer II position helps to focus the general evidence of discrimination upon the specific employment decision at issue. *See Randle*, 876 F.2d at 569.

Once it is established that DeCastecker has presented enough evidence under the direct method of proof to show that age may have been a substantial or motivating factor in the decision not to hire him, Case must respond by proving by a preponderance of the evidence that it would have made the same employment decision even if it had not taken the impermissible factor of age into account. *Price Waterhouse*, 490 U.S. at 258, 109 S.Ct. at 1794; *Visser*, 924 F.2d at 658. Case argues that it would have made the same employment decision not to hire DeCastecker because he lacked a college degree and thus was not qualified for the position. This congruence of Case's argument under the *Price Waterhouse* standard with the issue of DeCastecker's job qualifications brings us back to our previous analysis that it is a question of material fact whether DeCastecker was qualified for the job. Thus, the Court finds that Case has failed to meet its burden under *Price Waterhouse* so as to merit summary judgment here. *See Adler v. Madigan*, 939 F.2d 476, 479 (7th Cir.1991) ("'Mixed-motives' situations are ordinarily not grist for the summary judgment mill.")[4]

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. # 34] is **DENIED**.

---

**3.** Case cites *Anderson v. City of Bessemer*, 717 F.2d 149, 153 (8th Cir.1983), for the proposition that it is Plaintiff's burden to establish that he was *better qualified* than the successful applicant. Not only has *Anderson* been reversed by the U.S. Supreme Court, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), albeit on other grounds, but both the Sixth and Eleventh Circuits have categorically rejected such an approach because it creates another evidentiary burden that "unnecessarily complicates the issue." *Gafford v. General Elec. Co.*, 997 F.2d 150, 167 n. 9 (6th Cir. 1993); *Mitchell v. Baldrige*, 759 F.2d 80, 84–86 (D.C.Cir.1985). The Court thus finds that all that Plaintiff must show is that he was qualified for the position, not that he was more qualified than any other applicant. Moreover, even if the "better qualified" standard did apply here, an issue of material fact certainly exists in that regard. While Rondeau may have more education, DeCastecker has a great deal more work experience in his favor.

**4.** In light of the Court's finding that summary judgment is precluded under the direct method of proof, the Court need not address DeCastecker's claims under the *McDonnell Douglas* burden-shifting analysis. It should be noted, however, that the result would be the same under that analysis too.