**James E. MATTHEWS, Plaintiff,**

v.

**COMMONWEALTH EDISON COMPANY, Defendant.**

**No. 93 C 4140.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 30, 1996.

Leon M. Despres, Thomas Howard Geoghegan, Robert Chuck Drizin, Despres Schwartz & Geoghegan, Chicago, IL, for plaintiff.

Julie O'Donnell Allen, Lisa D. Freeman, Sidley & Austin, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff James Matthews brought this cause of action against his former employer Commonwealth Edison Company ("ComEd") alleging that he was discriminated against in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). ComEd moved for summary judgment on both counts pursuant to Rule 56 of the Federal Rules of Civil Procedure. Matthews cross-filed for summary judgment on his ADA claim. For the reasons set forth below, ComEd's motion for summary judgment on Matthews' ADA and ADEA claims is granted and Matthews' cross-motion for summary judgment on his ADA claim is denied.

### Background

The following facts are uncontested. James Matthews began working for ComEd in 1966 at its Waukegan station. In 1977 he was promoted into a management position at ComEd's Zion nuclear power generating station. Between 1977 and 1991, Matthews held a variety of management-level positions including Quality Control Inspector, Radiation Waste Supervisor and Electrical Maintenance Engineering Assistant. (Pl. 12(m) ¶¶ 3–6.) In 1991, Matthews was working as an Electrical Maintenance Supervisor. In July of that year, Matthews suffered a severe

heart attack and was forced to leave ComEd temporarily due to his medical condition. (Pl. 12(m) ¶ 7.)

Matthews returned to work on January 14, 1992. (Id.) Because of his heart condition, Matthews' doctor instructed him to avoid stressful situations and to ease into a full-time work schedule. (Id.) ComEd did not object to these conditions; but instead, catered to Matthews' new work-related restrictions. (Id.) Since Matthews' previous position as Electrical Maintenance Supervisor was stressful and could not be restructured into a part-time position, ComEd offered Matthews the job of Department Training Coordinator ("DTC") in the Electrical Maintenance department. (Def. 12(m) ¶ 24.) Matthews accepted the DTC position without objection and agreed that it was a reasonable alternative to his previously held job. (Pl. 12(m) ¶ 7.)

Pursuant to his doctor's instruction, Matthews gradually returned to a full-time work schedule in the DTC position. He started out working only two hours per day. Matthews eventually increased his working hours to four hours per day and then six hours per day. (Pl. 12(m) ¶ 10.) Seven months after his return to work, Matthews worked standard eight hour days, but his heart continued to trouble his health. Accordingly, Matthews' doctor recommended that he cut back to working six hour days. (Id.)

In the meantime, by the Spring of 1992, ComEd found itself in a fiscal crisis. Due to several court judgments and decisions by the Nuclear Regulatory Commission, ComEd was forced to refund hundreds of millions of dollars to its customers as well as reduce its rates. (Def. 12(m) ¶ 49.) At the same time, the value of ComEd's stock dropped and its earnings sharply declined. (Id.) In reaction to these adverse business conditions, ComEd undertook several measures to reduce operating costs, including a reduction in workforce ("RIF"). By the time the RIF was completed, ComEd had reduced its workforce by 1,250 employees. (Pl. 12(m) ¶ 50.)

At the heart of this dispute is the manner in which ComEd selected which employees would be affected by the RIF. Pursuant to the RIF plan, Zion Station Manager Robert Joyce met with top management at the plant and sought to determine who should be terminated. (Pl. 12(m) ¶ 22.) The group determined that employees would be terminated based on their performance and contribution to their respective departments rather than seniority. (Pl. 12(m) ¶ 23.)

Production Superintendent, William Kurth gave Assistant Superintendent Robert Johnson a list of employees to consider for termination. Matthews' name was on the list. Kurth instructed Johnson to evaluate the listed employees and rank them. (Pl. 12(m) ¶ 24.) Johnson, in turn, asked Elijah Campbell, Matthews' direct supervisor, to rank the Electrical Maintenance employees in order of most to least valuable in the Electrical Maintenance department. (Pl. 12(m) ¶ 25.)

Campbell ranked Matthews at the bottom of the list. Campbell ranked Matthews as the least valuable employee in the Electrical Maintenance department because Matthews had the poorest employee evaluation results in that department during the 1991 performance review period. (Pl. 12(m) ¶ 26.) The stated reason for Matthews' poor work performance was his inability to contribute to the Electrical Maintenance department. (Id.) Campbell stated that Matthews' inability to contribute was caused by his part-time schedule and six month absence. Both of these impediments to improved performance were caused by Matthews' heart condition. (Pl. 12(m) ¶¶ 26–28.)

Campbell returned his list of employee rankings to Johnson, who then discussed who should be terminated with Kurth. Afterwards, Kurth completed "separation justifications" for 25 employees. (Pl. 12(m) ¶¶ 31–33.) Matthews' separation justification stated that Matthews was working only six hours per day, that Campbell had ranked him as the least valuable contributor in the Electrical Maintenance department, and that Matthews appeared to have been a marginal performer. (Pl. 12(m) ¶ 34.) Matthews was fired from his position as DTC in August 1992. At the time, he was 48 years old. (Pl. 12(m) ¶ 7; Def. 12(m) ¶ 5.)

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the non-moving party must set forth specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

### Analysis

Matthews sued ComEd for age discrimination under the ADEA and disability discrimination under the ADA. Presently before the court are motions for summary judgment with respect to both the ADEA and ADA claims. Both parties have moved for summary judgment on Matthews' ADA claim, however, only ComEd moves for summary judgment on the ADEA claim. The court first addresses the ADA issue.

#### The ADA Claim

The ADA makes it unlawful for covered employers to discriminate against a "qualified individual with a disability" in regard to job application, hiring, advancement, discharge, and other terms, conditions, and privileges of employment because of that person's disability. 42 U.S.C. § 12112(a). The ADA defines a qualified individual with a disability as "[a]n individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff must also satisfy the requisite skill, experience and other job-related requirements of the job he seeks. 29 C.F.R. § 1630.2(m).

To survive summary judgment, Matthews must provide evidence that (1) he suffers from a disability as defined by the ADA; (2) he can perform the essential functions of his job with or without reasonable accommodation; and (3) his employer discriminated against him because of his disability. *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995). ComEd concedes that Matthews has produced evidence of the first two elements—that he is disabled as defined by the ADA and he can perform the essential functions of his job with or without reasonable accommodation. (Def.Mem. at 13 n. 4.) However, the parties dispute whether Matthews has met his burden under the third element. To meet this burden, Matthews must provide evidence from which a reasonable jury could conclude that ComEd terminated him because of his disability.

In attempting to evidence that he was fired because of his disability, Matthews may use either one of two distinct evidentiary methods: the "direct method" or the "indirect method." The parties advance their respective ADA summary judgment motions under different methods. Matthews frames his motion under the direct method of proof, while ComEd argues that the indirect approach should be used. Thus, the court's first order of business is to determine which method applies to Matthews' ADA claim. *See DeCastecker v. Case Corp.*, 900 F.Supp. 1041, 1044 (C.D.Ill.1995).

Under the direct method argued by Matthews, he may establish intentional discrimination by producing evidence that his disability motivated the decision to terminate him during the RIF. *See Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 158 (3d Cir.1995); *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir.1995); *Kelly v. Drexel Univ.*, 907 F.Supp. 864, 871 (E.D.Pa.1995); *Washington v. HCA Health Serv.*, 906 F.Supp. 386, 391 (S.D.Tex.1995). If Matthews makes this showing, the burden of proof shifts to ComEd. To meet its burden, ComEd must show that some non-discriminatory reason,

standing alone, would have induced it to discharge Matthews. *See Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 658 (7th Cir.1991). If ComEd does not meet its burden, Matthews is entitled to summary judgment.

ComEd argues that the indirect method of proof applies in this case. *See Newman*, 60 F.3d at 157–58; *DeLuca*, 53 F.3d at 797; *Kelly*, 907 F.Supp. at 870–71. The indirect method refers to the three step burden-shifting analysis developed in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At the first stage of this approach, Matthews bears the burden of establishing the four elements of a prima facie case of disability discrimination. *Wolf v. Buss America*, 77 F.3d 914, 919 (7th Cir. 1996). In this disability discrimination case involving a RIF, Matthews must establish that: (1) he is a member of the protected class; (2) his work performance met his employer's legitimate expectations; (3) his employment was terminated; and (4) employees not in the protected class were treated more favorably. *DeLuca*, 53 F.3d at 797; *Oxman v. WLS–TV*, 846 F.2d 448, 455 (7th Cir.1988). Establishment of a prima facie case creates a rebuttable presumption of discrimination. *Wolf*, 77 F.3d at 919. ComEd does not dispute that Matthews has established his prima facie case, thus the court moves to the second step of the analysis.

The second stage of the indirect method imposes a burden of production on the employer to articulate a legitimate non-discriminatory reason for terminating the employee. *Id.* Matthews does not dispute that ComEd's evidence that he was fired during a RIF caused by an economic downturn. This evidence of a RIF rebuts the presumption of discrimination and shifts the burden back to Matthews. *See Oxman*, 846 F.2d at 456 (RIF is a legitimate non-discriminatory reason for termination). Since ComEd has met this burden, it has rebutted the presumption of discrimination and shifted the burden of proof back to Matthews.

In the third and final stage of the inquiry, the employee must show by a preponderance of the evidence that the proffered reasons are a pretext for unlawful discrimination. *Id.* Pretext means that the reasons given by the employer are "a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995). Pretext may be established by showing that the employer was more likely than not motivated by a discriminatory reason, or by establishing that the employer's explanation is not credible. *Wolf*, 77 F.3d at 919.

It does not matter whether the court uses the direct or indirect method of proof to analyze these summary judgment motions. Under either method, the ultimate question is the same. The only issue is whether Matthews has produced evidence his disability motivated ComEd's decision to fire him. Under the direct method, Matthews must make this showing before the burden shifts to ComEd. Similarly, under the indirect method, the sole remaining issue is whether Matthews has evidence that his disability motivated the decision to terminate him. In other words, Matthews must provide evidence from which a reasonable jury could conclude that his disability was a motivating factor in ComEd's decision to terminate him. *See Wolf*, 77 F.3d at 919. The respective analytical frameworks are merely procedural devices designed "to establish an order of proof and production." *Saint Mary's Honor Center v. Hicks*, 509 U.S. 502, 521, 113 S.Ct. 2742, 2755, 125 L.Ed.2d 407 (1993); *Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 280 (7th Cir.1994) (methods of proof were developed to provide an orderly way to evaluate the evidence). Thus, the court turns to the determinative question of whether Matthews has produced evidence from which a reasonable jury could conclude that he was fired because of his disability.

ComEd insists that Matthews was terminated solely because of his limited productivity, availability, and capabilities in his department.[1] ComEd contends that although these

---

1. ComEd also asserts that Matthews was histori-

cally a marginal performer; Matthews, however,

reasons may be related to Matthews' heart condition, his disability was not a motivating factor in the termination decision. ComEd argues that it terminated Matthews based only on his poor performance review, not because of his heart condition.

In an effort to fulfill his evidentiary burden, Matthews points to deposition testimony given by his former supervisor, Elijah Campbell.[2] Campbell testified that Matthews was selected for termination because he was the lowest rated performer in the DTC department for the previous year. (Campbell Dep. at 9.) Matthews' performance rating was low because he had been absent from work for most of that year. (*Id.*) Campbell acknowledged that Matthews' heart condition was the primary cause of Matthews' excessive absence. (*Id.*)

According to Matthews, Campbell's testimony evidences that he was fired because of his disability. Matthews recognizes that his poor performance rating prompted his selection for termination. However, Matthews emphasizes that his poor performance was caused by his prolonged absence and inability to work full-time. Matthews therefore argues that ComEd's decision to fire him because of poor performance, which was caused by his disability, is tantamount to firing him because of his disability itself.

There are Rehabilitation Act cases that support Matthews' reading of the ADA. *See, e.g., Borkowski v. Valley Central Sch. Dist.,* 63 F.3d 131, 143 (2d Cir.1995); *Sedor v. Frank,* 42 F.3d 741, 746 (2d Cir.1994); *Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511, 515–16 (2d Cir.1991). Under the *Teahan* line of cases, evidence that a disabled employee is fired for behavior that is caused by his disability is evidence that he was fired because of his disability. *See Teahan,* 951

F.2d at 515–16. For example, in *Teahan,* the plaintiff was an alcoholic whose drinking caused him to be excessively absent from work. *Id.* at 513. His employer subsequently fired him because of his frequent absences. *Id.* According to the Second Circuit, proof that the employer fired the plaintiff because of absences caused by his disability constituted evidence that the employer terminated him because of his disability. *Id.* at 515–16. Analytically, *Teahan* rejects the "sharp distinction between a handicapping condition on the one hand and specific behavior on the other." *Hogarth v. Thornburgh,* 833 F.Supp. 1077, 1084 (S.D.N.Y.1993).

Nevertheless, the reasoning of *Teahan* does not apply to this case because this case involves a reduction in force.[3] Two cases from the *Teahan* line expressly recognize that this causation analysis is not appropriate in a RIF context. *See Borkowski,* 63 F.3d at 143 (disabled employees are not insulated from a RIF if employer uses neutral criteria); *Teahan,* 951 F.2d at 515–16 (employer's motivation for firing disabled employee cannot be equated with the disability if budget constraints are reason for termination). In this case, ComEd's stated reason for terminating Matthews is a cost-cutting RIF. In the *Teahan* line of cases the employer's stated reason for firing the disabled plaintiff was an actual attribute of disability. *Teahan,* 951 F.2d at 515.

■ *Teahan's* rationale does not apply in a RIF context because the actual motivation to fire employees is the employer's financial condition. During a RIF, employee attributes such as productivity levels simply serve as criteria by which the employer selects which employees are terminated. Provided the employer adheres to neutral criteria, it

---

sharply disputes this argument. The court need not determine the veracity of this point to decide these motions for summary judgment.

**2.** Matthews also argues in passing that he was discriminated against because he was not given another position within ComEd. (Pl.Mem. at 16.) This argument fails because Matthews has introduced no evidence that he specifically applied for those positions or that those jobs were available at the time. *See Taylor v. Canteen Corp.,* 69 F.3d 773, 781 (7th Cir.1995).

**3.** The logic of *Teahan* rests on shaky ground. Some courts have rejected the rationale espoused by the *Teahan* line of cases. *See, e.g., Maddox v. University of Tenn.,* 62 F.3d 843, 847 (6th Cir. 1995); *Little v. Federal Bureau of Investigation,* 1 F.3d 255, 259 (1st Cir.1993); *Taub v. Frank,* 957 F.2d 8, 11 (1st Cir.1992); *Lucero v. Hart,* 915 F.2d 1367, 1372 (9th Cir.1990); *Wilber v. Brady,* 780 F.Supp. 837, 840 (D.D.C.1992).

has not unlawfully discriminated. The ADA does not prohibit employers from using neutral criteria to lay off disabled employees during an economic downturn. To show intentional discrimination in a RIF case such as this, a plaintiff must produce evidence that his disability was actually a motivating factor in the decision to fire him. A relationship between poor productivity and a disability does not suggest that the disability motivated the termination decision.

This conclusion is consistent with the United States Supreme Court's holding in *Hazen Paper Company v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). In *Hazen Paper,* the 62 year old plaintiff was fired from his job just a few weeks before his pension benefits would have vested. *Hazen Paper,* 507 U.S. at 607, 113 S.Ct. at 1704–05. The evidence showed that the employer fired the plaintiff to prevent his pension from fully vesting. *Id.* The plaintiff sued under the ADEA claiming that his age had been a determining factor in the decision to terminate him. *Id.* at 606, 113 S.Ct. at 1704. The Court of Appeals for the First Circuit affirmed a jury verdict for the plaintiff and held that the jury could have reasonably concluded that age was a determining factor in the decision to fire him. *Id.* at 607, 113 S.Ct. at 1704–05. The Court of Appeals found that since the plaintiff's age was "inextricably intertwined with the decision to fire [him]," age was a motivating factor in the decision-making process. *Id.*

The Supreme Court reversed. The Court ruled that the evidence did not show that the employer's decision was based on age. *Id.* at 611–12, 113 S.Ct. at 1706–07. Instead, the Court decided that an employee's age and his employer's financial interests are analytically distinct. *Id.* at 611, 113 S.Ct. at 1706–07. The Court held that so long as age does not enter the employer's decision-making process, there is no violation of the ADEA. *Id.* The Court emphasized that "[t]his is true even if the motivating factor is correlated with age, as pension status typically is." *Id.* In other words, "decisions based on criteria which merely tend to affect workers over the age of forty more adversely than workers under forty are not prohibited." *E.E.O.C. v.*

*Francis W. Parker Sch.,* 41 F.3d 1073, 1077 (7th Cir.1994).

Matthews' claim that he was discriminated against because of his disability is analogous to the plaintiff's claim in *Hazen Paper.* Like the plaintiff in *Hazen Paper,* economic purposes motivated Matthews' discharge. Additionally, Matthews was selected for termination based on criteria that is inextricably rooted in his disability. Mainly, Matthews was selected for discharge because he was not as productive as other employees in his department. There is no dispute that Matthews' low productivity was caused by his heart condition.

■ In *Hazen Paper,* the Court noted that age is typically linked with pension status. 507 U.S. at 611, 113 S.Ct. at 1706–07. Similarly, a disability may limit the efficiency with which an employee can perform a job. However, the fact that an employee is terminated for performance that is empirically related to his disability does not show that disability was a motivating factor in the termination decision. *See Hazen Paper,* 507 U.S. at 611–12, 113 S.Ct. at 1706–07. Decisions which are based on reasons independent of disability but which happen to correlate with disability are not actionable under the ADA. *See Francis W. Parker,* 41 F.3d at 1077. A claim under the ADA cannot succeed unless the employee's disability actually played a role in the decision-making process. *See Hazen Paper,* 507 U.S. at 610, 113 S.Ct. at 1706.

Matthews' position is also similar to the plaintiff's argument in *Callan v. Amdahl Corp.,* No. C–94–0295–VRW, 1995 WL 261420 (N.D.Cal. April 24, 1995). In *Callan,* the plaintiff, who suffered from a heart condition, sued under the ADA and the ADEA after he was terminated during a reduction in force. *Id.* at *1–2. During the RIF, Managers were instructed to rank employees in their departments in order of necessity. *Id.* at *2. Based on managerial rankings, many employees, including the plaintiff, were terminated. *Id.* In an attempt to prove pretext, the plaintiff argued that the only reason he was fired was because his last performance evaluation ranked him "below requirements." *Id.* Like Matthews, the

plaintiff introduced testimony from his manager that the deficiency in his performance review was caused by his heart condition. *Id.* at *3.

In evaluating the facts before it, the court concluded that "[n]one of this evidence demonstrates that defendant's decision to terminate plaintiff's employment was for any reason other than the one defendant offers, namely the defendant's business-related RIF. An employee's illness does not insulate the employee from legitimate employer concerns about his ability to perform ... Such evidence is not even a mere scintilla of evidence that the employer acted on the basis of motives prohibited under the Act and is insufficient to survive summary judgment." *Id.; see also Jacquez v. Diameters Corp.,* No. 93 C 0986, 1995 WL 144486 at *6–7 (N.D.Ill. March 31, 1995) (fact that older employees are terminated during RIF because they are less productive does not evidence age discrimination).

■ This court agrees with the analysis of the *Callan* court. The ADA does not prohibit an employer from holding disabled employees to the same productivity standards as non-disabled employees. 29 C.F.R. § 1630 App. "The ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the workplace based on the same performance standards and requirements that employers expect of persons who are not disabled." *Id.*

During a reduction in force, an employer is under adverse financial constraints. These financial conditions frequently require the employer to discharge many employees that, in more prosperous circumstances, would continue to work for that employer. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1083 (11th Cir.1990). However, it is the nature of a RIF that only the most efficient employees are retained. This is true because the remaining employees must take on a greater share of work. To ensure that business remains profitable, the employer is often forced to elevate standards of productivity and terminate those employees that do not meet the new threshold.

■ Unfortunately, this type of workforce reduction may impact disabled employees more harshly than non-disabled employees. However, the mere fact that a less productive disabled employee is terminated and a non-disabled employee retained does not evidence intent to discriminate against the disabled employee. The ADA prohibits employers from using disability, not productivity, as a criteria for discharge. The ADA does not require employers to retain a less productive employee during a RIF simply because that employee's deficient performance is caused by a disability. *Callan,* 1995 WL 261420 at *3. To impose this duty on employers would contravene the ADA's purpose of enabling "disabled persons to compete in the workplace based on the same performance standards and requirements ... of persons who are not disabled." 29 C.F.R. § 1630 App.

■ Matthews has introduced evidence that he was fired because his performance rating for the previous year was low. Matthews has also shown that his heart condition was the primary reason for this low rating. Although there may be a correlation between Matthews' disability and his level of productivity, this correlation alone is not evidence of an intent to discriminate against him. *See Hazen Paper,* 507 U.S. at 611–12, 113 S.Ct. at 1706–07; *Francis W. Parker,* 41 F.3d at 1077. Matthews has not shown evidence that ComEd considered his heart condition in its decision-making process. Matthews has only established that ComEd knew his heart condition caused his decreased performance. ComEd's knowledge does not show that it intended to fire him because of his disability. *See Visser,* 924 F.2d at 659; *Callan,* 1995 WL 261420 at *2–3.

If ComEd had retained a non-disabled employee who had a lower performance review than Matthews, this would evidence an intent to discriminate against the disabled Matthews. Similarly, evidence that ComEd terminated Matthews based on a stereotypical notion that he could not perform his job would indicate unlawful discrimination. However, Matthews has not produced these types of evidence. Matthews has therefore failed to produce evidence from which a rea-

sonable jury could conclude that ComEd terminated him because of his disability. Accordingly, ComEd's motion for summary judgment on Matthews' ADA claim is granted and Matthews' motion for summary judgment on his ADA claim is denied.

*The ADEA Claim*

Matthews next alleges that ComEd terminated him because of his age in violation of the Age Discrimination in Employment Act. The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection against discrimination applies to individuals between the ages of 40 and 70. *See* 29 U.S.C. § 631(a). It is undisputed that Matthews was 48 at the time he was terminated. *See* Pl. 12(m) at ¶ 7; Def. 12(m) at ¶ 5.

Like other anti-discrimination statutes, both the direct and indirect methods of proof may be used to prove ADEA claims. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994). The parties agree that the indirect method of proof applies to Matthews' ADEA claim. (Defs. Mem. at 10; Pl.Mem. at 18–19.)

In support of its motion for summary judgment, ComEd contends that Matthews has not established the prima facie case of age discrimination required by the indirect method of proof. (Defs.Mem. at 10.) To establish a prima facie case, Matthews must show that: (1) he is a member of the protected class; (2) his work performance met his employer's legitimate expectations; (3) his employment was terminated; and (4) employees not in the protected class were treated more favorably. *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir.1995).

■ ComEd argues that Matthews has not shown that his work performance met its legitimate expectations. Matthews responds that he has established this element of the prima facie case because ComEd admitted that he was a qualified individual with a disability for purposes of the ADA issue. By definition, a qualified individual with a dis-

ability is one who satisfies the requisite skill, experience and other job-related requirements of the position in question. 29 C.F.R. § 1630.2(m).

The court agrees with Matthews. "The prima facie case method was 'never intended to be rigid, mechanized, or ritualistic.'" *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978)). ComEd's admission indicates that it viewed Matthews as capable of performing all of the essential function of his position. By admitting that Matthews is a qualified individual with a disability, ComEd recognized that he satisfies the requisite skill and other requirements of his job. *See* 29 C.F.R. § 1630.2(m). This is sufficient to establish he was meeting his employer's legitimate expectations.

■ Matthews has therefore established his prima facie case and created a rebuttable inference of age discrimination. *See Wolf*, 77 F.3d at 919. To rebut this inference, ComEd must articulate a non-discriminatory reason for terminating Matthews. *Id.* ComEd has successfully met its burden by producing evidence of its reduction in force. *See Oxman*, 846 F.2d at 456 (RIF is a legitimate non-discriminatory reason for termination). To get past summary judgment, Matthews must produce evidence from which a reasonable jury could conclude that the RIF is a pretext for age discrimination. *Wolf*, 77 F.3d at 919. Matthews may establish pretext by showing that ComEd was more likely than not motivated by his age, or by establishing that the ComEd's explanation is not credible. *Id.*

Matthews' only evidence of pretext is his deposition testimony. Matthews testified that after he was fired, "many people" said that he was fired because of his age. (Matthews Dep. at 119.) However, no ComEd official ever indicated that Matthews was fired because of his age. *Id.* In fact, the people who said Matthews had been fired because of his age were not ComEd employees when they made those comments. *Id.* at 121. Moreover, none of those individuals ever substantiated the allegations that Mat-

thews was fired because of his age with any evidence. *Id.*

These comments, made after the termination decision by individuals completely removed from the decision-making process are not evidence of discrimination. *See Rush v. McDonald's Corp.,* 966 F.2d 1104, 1116 (7th Cir.1992) (remarks must be both related to and contemporaneous with the termination decision to constitute evidence of discriminatory intent); *McCarthy v. Kemper Life Ins. Co.,* 924 F.2d 683, 687 (7th Cir.1991) (same). Matthews has therefor failed to produced evidence from which a reasonable factfinder could infer that he was terminated him because of his age. Accordingly, ComEd's motion for summary judgment on the ADEA claim is granted.

### Conclusion

ComEd's motion for summary judgment on Matthews' ADA and ADEA claims are granted. Matthews' cross-motion for summary judgment on his ADA claim is denied. Entering judgement for defendant. The date for filing any related motions will start to run from the date this Memorandum Opinion and Order is entered.