**Reginald K. BROWN, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General, United States Postal Service, Defendant.**

No. 96 C 6234.

United States District Court, N.D. Illinois, Eastern Division.

April 24, 1998.

Peter M. King, Canel, Davis & King, Chicago, IL, for Plaintiff.

Brian D. Bossert, Asst. U.S. Atty., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter comes before the Court on Defendant's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion is granted.

### BACKGROUND

Plaintiff Reginald Brown worked for the United States Postal Service ("Postal Service") from 1979 until his termination on June 16, 1995. (Defendant's 12(M) Statement of Material Facts Not in Dispute [Def.'s 12(M) ] ¶ 1.) Mr. Brown's employment record reflects four reprimands for attendance problems during his tenure with the

1. No action was taken as a result of these complaints. Mr. Brown met with an EAP representative on March 29, 1995. Another meeting was

Postal Service. (Plaintiff's 12(N)(3)(b) Statement of Additional Facts [Pl.'s 12(N)(3)(b) ] ¶ 2.)

During the events leading up to this dispute, Mr. Brown was assigned to the Austin Station as a mail carrier. (Pl.'s 12(N)(3)(b) ¶ 1.) Mr. Brown's direct superior at the Austin Station was Berita Campbell, a customer service supervisor. (Pl.'s 12(N)(3)(b) ¶ 3.) Jacquelyn Walker Glenn, Assistant Supervisor, also possessed disciplinary authority over Mr. Brown. (Def.'s 12(M), Ex. 4, ¶ 3.) The manager, and ultimate disciplinary decision-maker, at the Austin Station was John Sims. (Def.'s 12(M) ¶ 20.) In late 1994 and early 1995, Mr. Brown and Ms. Campbell experienced conflict in their working relationship. Ms. Campbell made comments directed at Mr. Brown including "you're not acting like a man," and "why don't you be a man about it." (Pl.'s 12(N)(3)(b) ¶ 4.) Mr. Brown complained to his union steward and the Postal Service's Employee Assistance Program ("EAP") about the comments made by Ms. Campbell.[1] (Pl.'s 12(N)(3)(b) ¶ 5.) However, at his deposition, Mr. Brown was unable to recall when Ms. Campbell made the comments or whether she treated him differently than other mail carriers she supervised. (Def.'s 12(M) ¶¶ 25, 26.)

It appears that these comments were made some time before the March 23, 1995 incident that led to Mr. Brown's suspension and his eventual termination of employment. (Pl.'s 12(N)(3)(b) ¶¶ 4–6.) A few weeks prior, Mr. Brown decided to sell one of his Postal Service uniform coats to a new part-time Postal Service employee, Asyia Woodley, for $75. (Pl.'s 12(N)(3)(b) ¶ 6.) At the time the coat agreement was made, Ms. Woodley was assigned to the Austin Station, however, she was transferred to a different station—Garfield Station—at least a week before March 23, 1995. (Pl.'s 12(N)(3)(b), Ex. D at 7–8; Def.'s 12(M) ¶ 5.)

Mr. Brown asserts that he gave the coat to Ms. Woodley in exchange for $50 in early March, and that the remaining $25 was to be paid later. (Pl.'s 12(N)(3)(b) ¶ 6.) Ms. Woodley asserts that she gave a $50 down pay-

scheduled for June 16, 1995, but Mr. Brown did not appear. (Pl.'s 12(N)(3)(b), Ex. C.) The case was closed on July 25, 1995. (Id.)

ment to Mr. Brown in early March, but that Mr. Brown did not deliver the coat until March 23, 1995.[2] (Pl.'s 12(N)(3)(b) ¶¶ 7, 8.)

Since this case is at the summary judgment stage, the Court will construe the facts in the light most favorable to Mr. Brown. Regardless, in either version, on March 23, 1995, Ms. Woodley decided that the coat did not meet her expectations and she refused to pay the final $25 owed to Mr. Brown. (Pl.'s 12(N)(3)(b) ¶¶ 10, 12.)

That day, Ms. Woodley and Mr. Brown quarrelled about the coat deal while they were still on Postal Service property, in the Austin Station building. (Pl.'s 12(N)(3)(b) ¶¶ 10–12.) During the argument, Ms. Woodley was "off the clock," however, Mr. Brown was "on the clock" (i.e. on duty). (Def.'s 12(M) ¶ 5; Pl.'s 12(N)(3)(b) ¶ 38.) The argument traveled outside, as they walked to Ms. Woodley's car, parked off Postal Office property near an Amoco gas station. (Pl.'s 12(N)(3)(b) ¶ 13; Def.'s 12(M) ¶ 4.) Apparently, since the coat deal had broken down, Mr. Brown wanted Ms. Woodley to take him to a currency exchange where he could get $50. Then Mr. Brown intended to return Ms. Woodley's $50 payment so that he could keep his coat. (Pl.'s 12(N)(3)(b), Ex. D at 15.)

They never made it to the currency exchange. After walking to the car, a fight ensued. (Pl.'s 12(N)(3)(b) ¶¶ 13–17.) Each party accuses the other of being the aggressor in the physical altercation.[3] (Id.) Testimony of witnesses to the fracas does not clear the fog of conflicting accounts. (Pl.'s 12(N)(3)(b) ¶¶ 28–33; Pl.'s 12(N)(3)(b), Ex.

G.) Nonetheless, it is clear that the fight ended after Mr. Brown hit Ms. Woodley on the shoulders twice, she fell to the ground, and he walked away.[4] (Pl.'s 12(N)(3)(b) ¶¶ 14, 30.)

Ms. Woodley then returned to the Austin Station and reported the incident to Ms. Campbell. (Def.'s 12(M) ¶ 6.) The Postal Inspector's office and the police department were notified of the altercation. (Pl.'s 12(N)(3)(b) ¶¶ 19–20.) Mr. Brown returned to Austin Station to "punch" his time card, which would take him "off the clock." (Pl.'s 12(N)(3)(b) ¶ 40.) Before punching his time card, Mr. Brown encountered Ms. Campbell, but they did not discuss the incident that had occurred between him and Ms. Woodley. (Id.)

After Mr. Brown had punched out, Moutrie Salter, the Postal Inspector, arrived at the Austin Station, and took a statement from Ms. Woodley. (Def.'s 12(M) ¶¶ 8–9.) The Postal Inspector also interviewed Gustavo Zavala, an Amoco gas station attendant, who witnessed part of the physical altercation. (Def.'s 12(M) ¶ 10.) Mr. Zavala did not sign any statements at that interview.[5] (Pl.'s 12(N)(3)(b) ¶ 28; Pl.'s 12(N)(3)(b), Ex. H at 22.)

The next day, Mr. Brown's superiors—Ms. Campbell and Mr. Sims—signed a "Notice of Emergency Placement In Off Duty Status" document, and suspended Mr. Brown. (Pl.'s 12(N)(3)(b) ¶ 41.) The document explained that Mr. Brown was suspended because he had engaged in a physical altercation, with another employee, while on the clock.[6] (Id.)

---

2. At her deposition, Ms. Woodley stated that she only agreed to pay $50 for the coat. (Pl.'s 12(N)(3)(b), Ex. D at 7–12.) However, in her signed March 23, 1995, statement made before the Postal Inspector (Pl.'s 12(N)(3)(b), Ex. E), and in testimony at Mr. Brown's criminal trial, (Pl.'s 12(N)(3)(b), Ex. F at 6) Ms. Woodley stated that she agreed to pay $75.

3. Mr. Brown says that Ms. Woodley threatened that she would cut him with a knife, and that she then attacked him near the passenger side of the car. (Pl.'s 12(N)(3)(b) ¶ 13.) Mr. Brown maintains that he was acting in self-defense during the tussle. (Pl.'s Mem. Resp. Def.'s Mot. Summ. J. at 12.) On the other hand, Ms. Woodley insists that Mr. Brown attacked her because she refused to take him to the currency exchange. (Pl.'s 12(N)(3)(b), Ex. D at 20–21.)

4. Ms. Woodley asserts that Mr. Brown also kicked her multiple times. (Def.'s 12(M) ¶ 4.)

5. Notes that the Postal Inspector took at the interview were included in his investigation report. (Pl.'s 12(N)(3)(b) ¶¶ 28, 29.)

6. A general order of the Postal Service provides that:

[f]ights and assaults by postal employees, while on duty or on postal premises will not be tolerated. There can be no provocation sufficient to justify an assault. Thus be advised that fighting on the job will normally warrant Discharge! The immediate corrective actions which will be taken may include emergency suspension then REMOVAL.

(Def.'s 12(M), Ex. 9, Postal Service General Order, No. 15999, May 11, 1994).

That day, Ms. Woodley filed criminal misdemeanor charges against Mr. Brown. (Pl.'s 12(N)(3)(b), Ex. F.) These charges were later dismissed in state court.

It was not until March 29, 1995, six days after the parking lot fight, that the Postal Inspector scheduled an interview with Mr. Brown to discuss the altercation. (Def.'s 12(M) ¶ 13.) At the scheduled meeting, the Postal Inspector requested that Mr. Brown sign a waiver of rights form. (Pl.'s 12(N)(3)(b) ¶ 45.) Mr. Brown refused to sign the form and the interview was canceled. (*Id.*) Although neither the Postal Inspector nor anyone at the Postal Service ever took a formal statement from Mr. Brown, he remained suspended until May 6, 1995, when he received a "Notice of Removal." (Pl.'s 12(N)(3)(b) ¶ 47.) The notice was signed by Jacquelyn Walker Glenn and John Sims. (*Id.*) The notice indicated that Mr. Brown was terminated because he "physically assaulted" Ms. Woodley "while in postal uniform." (Pl.'s 12(N)(3)(b), Ex. N.) The termination was effective on June 16, 1995. (Pl.'s 12(N)(3)(b) ¶ 47.)

Mr. Brown filed Step 1, 2, and 3 grievances with the Postal Service; however, they were all denied by the Postal Service.[7] (Pl.'s 12(N)(3)(b) ¶¶ 49–51.) On November 14, 1995, a hearing on the grievances was held before an arbitrator. (Def.'s 12(M) ¶ 28.) Based considerably on the Postal Inspector's report, Ms. Woodley's statement, and the Austin Station manager's termination decision, the arbitrator concluded that Mr. Brown was the aggressor in the March 23, 1995, altercation and, therefore, denied Mr. Brown's grievance. (Def.'s 12(M), Ex. 3, *United States Postal Serv. v. National Assoc. of Letter Carriers, AFL–CIO,* Case Nos. J9ON–4J–D95059721 GTS–6721 and J9ON–4J–D95061655 GTS–6722, at 12–14 (1995) (Erbs, Arb.).)

On September 26, 1996, Mr. Brown filed a complaint in federal district court. Count I of his Complaint alleged sexual discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–16 ("Title VII"), and count II sought reversal of the arbitrator's ruling. On December 19, 1997, Defendant filed the instant Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact, and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

The initial burden is on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*citing* FED. R. CIV. P. 56(c)). The non-movant then has the burden of providing specific facts, showing a genuine issue "open for trial." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1109 (7th Cir.1992); see also *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994) (stating that exclusive reliance on the allegations in the pleadings is insufficient to survive summary judgment). Mr. Brown must present sufficient evidence to show the existence of each element of his case, on which he will bear the burden at the trial. *Serfecz v. Jewel Food Stores,* 67 F.3d 591, 596 (7th Cir.1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996). Summary judgment must be granted, unless there is sufficient evidence for a jury verdict in favor of the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *County of Vernon v. United States,* 933 F.2d 532, 534 (7th Cir.1991).

In deciding a motion for summary judgment, the Court must view all facts in the

---

7. Postal Service representative Phyllis Lingenfelser's denial of the Step 3 grievance on July 28, 1995, read as follows: "The issue is did Management issue the Emergency Placement off duty for just cause. The grievant assaulted another postal employee (female) while on duty. The emergency placement off duty was for just cause. Accordingly, this grievance is denied." (Pl.'s 12(N)(3)(b) ¶ 51; Pl.'s 12(N)(3)(b), Ex. R.)

light most favorable to the non-moving party. *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991). However, the Court is "not required to draw every conceivable inference from the record [in favor of the non-movant]—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). Further, under Northern District of Illinois Local Rule 12(N), a non-movant's failure to contest the movant's Local Rule 12(M) statement of facts "is considered a binding admission of those facts." *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1313 (7th Cir.1995).

## DISCUSSION

Defendant seeks summary judgment on Counts I and II of Mr. Brown's Complaint. Mr. Brown has answered the motion for summary judgment only as to Count I. However, this Court will assess both counts to determine if there are any genuine issue of material fact barring summary judgment. Upon review, this Court concludes that Mr. Brown has not met his burden as to either count.

### I. *Sex Discrimination*

Count I alleges that Defendant discriminated against Mr. Brown on the basis of his sex. Title VII establishes that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e–2(a)(1) (1994). Here, Mr. Brown may avert summary judgment in one of two ways: by providing enough direct evidence substantiating unlawful discrimination; or by meeting all of the elements of the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting method of proof. *See Bahl v. Royal Indem. Co.,* 115 F.3d 1283, 1290 (7th Cir.1997). However, Mr. Brown falls short under either approach.

### A. Direct Evidence of Sex Discrimination

■ To successfully meet the direct evidence test, Mr. Brown must provide " 'evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption.' " [8] *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 443 (7th Cir.1997) (quoting *Plair v. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir.1997)). Mr. Brown's evidence " 'must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question.' " *Id.* (quoting *Randle v. LaSalle Telecomms., Inc.,* 876 F.2d 563, 569 (7th Cir. 1989)). The evidence "must relate to the motivation of the decisionmaker responsible for the contested decision." *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 203 (7th Cir. 1996). Further, if the direct evidence submitted includes statements made by supervisors, a "nexus" must exist between the statements and the "contested employment actions." *Cheek,* 97 F.3d at 203.

In *Cheek,* the plaintiff was suspended for six months for "excessive absenteeism." *Id.* at 202. The plaintiff provided comments made by a supervisor (more than ten years before) as direct evidence of sex discrimination. The comments included " '[w]e don't like women, but we have to accept them,' " and " '[t]here is no woman worth top pay.' " *Id.* at 203. The court ruled that the comments were not direct evidence of discrimination because there was an insufficient relation between the remarks and the plaintiff's suspension. *Id.; see also Bahl,* 115 F.3d at

---

**8.** The courts in *Huff v. UARCO, Inc.,* 122 F.3d 374, 380 (7th Cir.1997), and *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1397 (7th Cir. 1997) relied on *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (1994) to enunciate another definition of the direct evidence test. The *Huff* court stated that "[under] the direct proof method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination." 122 F.3d at 380. However, the majority of Seventh Circuit Court of Appeals opinions in Title VII cases have specifically ruled that direct evidence may not rely on " 'inference or presumption.' " *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 443 (7th Cir.1997) (quoting *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir.1997)); *Bahl,* 115 F.3d at 1290 (7th Cir.1997). The *Huff, Wallace,* and *Troupe* definition of direct evidence includes elements of the indirect burden-shifting method of proof. *See Huff,* 122 F.3d at 380. This Court chooses to keep the two tests separate and, therefore, employs the definition stated in *Cowan.*

1293 (stray workplace remarks that are not "proximate and related to the employment decision" are insufficient to defeat summary judgment).

Likewise, in *Randle*, the plaintiff, an African–American, alleged racial discrimination against her former employer. 876 F.2d at 564–65. The plaintiff was terminated after she failed to comply with her contractual obligations. As direct evidence of racial discrimination, the plaintiff proffered racially and ethnically derogatory remarks made by the defendant's managers. *Id.* at 570. One of the managers had remarked that the way " 'things are going, [defendant's company] will soon be all black.' " *Randle*, 876 F.2d at 570. The court ruled that, although the comments might be "circumstantial proof of ... discriminatory animus, they [we]re completely unrelated to the employment decision challenged ...." *Randle*, 876 F.2d at 570.

■ Here, Mr. Brown asserts that comments made by his immediate supervisor, Berita Campbell, (at the Austin Station) are direct evidence of sex discrimination. On an occasion that Mr. Brown cannot accurately recall, Ms. Campbell told Mr. Brown that "you're not acting like a man," and "why don't you be a man about it." (Pl.'s 12(N)(3)(b) ¶ 4.) Unlike the statements in *Cheek* and *Randle* that show a general dislike for a protected class (women or African–Americans), Ms. Campbell's comments do not suggest a general discriminatory animus toward men. The comments do not directly indicate that Ms. Campbell believed that men do not make adequate postal workers or that she had an agenda to purge the Postal Service of men, including Mr. Brown. Further, in *Cheek* and *Randle*, it is obvious that there was a discriminatory animus towards women, in the first instance, and African Americans, in the second.[9] But even in those situations, the comments were not held to be direct

evidence of unlawful discrimination in an employment action because the comments did not relate to the employment action itself. Similarly, here, the comments do not relate to Ms. Campbell's and Mr. Sims' decision to suspend Mr. Brown, nor do they relate to Ms. Glenn's and Mr. Sims' decision to terminate Mr. Brown.[10] Those decisions were made because Mr. Brown was involved in a fight, was on the clock, and was in Postal Service uniform. Mr. Brown provides no evidence that Ms. Campbell was involved in the decision to terminate him.

■ As previously discussed, after Mr. Brown was suspended and then terminated, he filed grievances with the Postal Service challenging the employment actions, which were ultimately denied by Postal Service representative Phyllis Lingenfelser.[11] Mr. Brown asserts that Ms. Lingenfelser's reasons for denying the grievance show direct evidence of sex discrimination. In her decision, Ms. Lingenfelser stated "[t]he issue is did Management issue the Notice of Removal for just cause in accordance with Article 16 of the N.A. [National Agreement]. The grievant assaulted a female carrier while on duty at a gas station. That type of conduct is unacceptable. The grievant was removed for just cause." (Pl.'s 12(N)(3)(b) ¶ 53.) Mr. Brown insists that Ms. Lingenfelser's reference to a "female carrier" is direct evidence of discrimination. This Court disagrees and finds that the identification of a carrier as "female" is, at best, weak circumstantial evidence of discrimination. Thus, the reference does not suggest that Ms. Lingenfelser denied Mr. Brown's grievances because he is male, or because Ms. Woodley is female.

In sum, the stray comments made by Ms. Campbell, and Ms. Lingenfelser's use of the word "female," are not direct evidence creating any genuine issue of material fact that

---

**9.** It is not as clear in this case whether there was actual anti-male animus. Here, there are no statements made by Ms. Campbell that she does not like men, unlike the statements against women in *Cheek*. In addition, there are no negative statements made by Ms. Campbell, nor any other Postal Service Officer, that men were going to occupy all the employment positions, unlike the derogatory statements against African–Americans in *Randle*.

**10.** Ms. Campbell signed the "Notice of Emergency Placement In Off Duty Status" (Pl.'s 12(N)(3)(b) ¶ 41), but not the "Notice of Removal." (Id. at 47.)

**11.** Ms. Lingenfelser's job was to assess the employment action taken by Mr. Sims and Ms. Glenn. She was not directly involved in the initial decision, to terminate Mr. Brown, at issue here.

Mr. Brown may have been discriminated against on the basis of his sex.

## B. Balance–Shifting Method of Proof

The three-step process of the balance-shifting method in Title VII discrimination cases was originally formulated in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To avoid summary judgment, the plaintiff must first show, by a preponderance of the evidence, a prima facie case of, in this instance, sex discrimination. *Id.* at 802, 93 S.Ct. 1817; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Here, Mr. Brown must establish that: "(1) he belongs to a protected class (in this case, males); (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) the [Defendant] treated a similarly-situated female employee more favorably." *Greenslade v. Chicago Sun–Times, Inc.*, 112 F.3d 853, 863 (7th Cir. 1997). If a prima facie case is shown, the burden of proof then shifts to the Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see Cowan*, 123 F.3d at 445. If the Defendant provides a nondiscriminatory reason, the burden of proof shifts back to Mr. Brown to "prove by a preponderance of the evidence that the legitimate reasons offered by [the Defendant] were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *see Cowan*, 123 F.3d at 445. Although the Defendant must rebut any presumption of discrimination that a successful prima facie case creates, the ultimate burden of persuasion remains with Mr. Brown. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 1. *Prima Facie Case*

■■■ Mr. Brown meets the first three elements of the prima facie case; however, he stumbles at the "similarly-situated" fourth prong. First, Mr. Brown, as a male, is a member of a protected class in a sex discrimination case. *See Greenslade*, 112 F.3d at 863; *Auston v. Schubnell*, 116 F.3d 251, 254 (7th Cir.1997). Second, Mr. Brown performed his job in a satisfactory manner.

Over sixteen years as an employee of the Postal Service, Mr. Brown received only four reprimands (all for inadequate attendance). This is not a case like *Oates v. Discovery Zone*, where the plaintiff did not meet job performance standards because he was chronically late or absent during a seven-month employment period and failed to follow attendance reporting procedures. 116 F.3d 1161, 1170–71 (7th Cir.1997). Third, Mr. Brown suffered an adverse employment decision when he was terminated on June 16, 1995. Therefore, Mr. Brown has met the first three elements of the prima facie case.

■■■ To complete the prima facie case, Mr. Brown must show that his supervisors "treated a similarly-situated female employee more favorably." *Greenslade*, 112 F.3d at 863; *see, e.g., Collier v. Budd Co.*, 66 F.3d 886, 891 (7th Cir.1995) (stating that, in an age discrimination case, the test is not that an older employee was discharged and replaced by a younger employee, but that younger employees were treated more favorably). Significantly, when the altercation between Mr. Brown and Ms. Woodley occurred, Mr. Brown was still on the clock, whereas Ms. Woodley was not. The Postal Service regulation specifically states that "[f]ights and assaults by postal employees, while on duty . . . will not be tolerated." (Def.'s 12(M), Ex. 9, Postal Service General Order, No. 15999, May 11, 1994.) In light of this difference, this Court concludes that Mr. Brown and Ms. Woodley were not similarly situated.

Even if Ms. Woodley had been on the clock, she and Mr. Brown would still not be similarly situated. Notably, in *Timms v. Frank*, the plaintiff applied to be reinstated to the postal service after being terminated. 953 F.2d 281, 287 (7th Cir.), *cert. denied sub nom. Timms v. Coughlin*, 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992). Her application was denied, but a previous male employee was reinstated when he applied. The Seventh Circuit Court of Appeals ruled that the two were not similarly situated because the applications were assessed by different people. *Timms v. Frank*, 953 F.2d at 287. Here, Mr. Brown worked at the Austin Station, under the supervision of Mr. Sims, Ms. Campbell, and Ms. Glenn. Ms. Woodley,

on the other hand, was assigned to the Garfield Station, where none of the Austin Station supervisors had authority with respect to employment decisions. Mr. Brown has provided no evidence to contradict the supervisory constraints that precluded the Austin Station supervisors· from exercising any authority over Ms. Woodley.

However, this Court will address the remainder of ·the burden-shifting method of proof analysis. Even assuming that Mr. Brown has met his prima facie case, he cannot establish that the Defendant's reasons are merely pretext.

· 2. *Legitimate Reasons for Mr. Brown's Removal*

 Assuming that a prima facie case of sex discrimination is presented, the Defendant must then rebut the presumption of discrimination by showing "the existence of legitimate nondiscriminatory reasons" for Mr. Brown's termination. *Burdine*, 450 U.S. at 252, 101 S.Ct. 1089. ·At this stage, the Defendant's reasons "need only be facially nondiscriminatory." *Greenslade*, 112 F.3d at 864. The evidence, "if believed by the trier of fact", must suggest the reason for Mr. Brown's termination was not unlawfully discriminatory. *St. Mary's Honor Ctr.*, 509 U.S. at 507, 113 S.Ct. 2742. Here, the Defendant argues that Ms. Woodley's signed statement, the Postal Inspector's investigatory report, and the alleged testimony of Mr. Zavala (the Amoco gas station attendant) all supported that Mr. Brown assaulted Ms. Woodley, while on the clock, in postal uniform. Mr. Sims and Ms. Glenn decided that this information warranted Mr. Brown's dismissal. A trier of fact is likely to perceive these reasons as legitimate; therefore, the Defendant has met its burden here.

3. *Pretext*

 Mr. Brown is unable to prove that all of the reasons the Defendant gave for terminating Mr. Brown's employment were lies, and that the Defendant intentionally discriminated against him because of his sex. To show pretext, Mr. Brown must " 'create an issue as to whether the employer honestly believes in the reasons it offers, not whether [the employer] made a bad decision.' " *Greenslade*, 112 F.3d at 864 (quoting *Sample v. Aldi, Inc.*, 61 F.3d 544, 549 (7th Cir.1995)); *see also Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995) (stating that pretext means a lie, not a mistake). Further, if one of the Defendant's legitimate reasons "stand[ ] unquestioned," Mr. Brown cannot defeat summary judgment. *Russell*, 51 F.3d at 69. Finally, the evidence Mr. Brown provides must not only make the trier of fact "disbelieve the employer[,] the factfinder must believe [Mr. Brown's] explanation of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 519, 113 S.Ct. 2742.

In *Huff*, the Seventh Circuit Court of Appeals found that the plaintiffs showed the existence of a genuine issue of material fact, as to age discrimination, sufficient to defeat a motion for summary judgment. 122 F.3d at 388. Allegedly, in *Huff*, supervisors made discriminatory remarks about the plaintiffs, younger workers were rehired in contravention of a seniority policy, and a dispute existed as to whether older workers were targeted for removal. *Id.* at 385–88. Although none of these reasons alone were sufficient to withstand summary judgment, the court reasoned that the combination of these reasons, while still "weak," warranted granting the plaintiffs a day in court. *Id.* at 388. In contrast, in *Bahl*, the Seventh Circuit Court of Appeals upheld summary judgment. 115 F.3d at 1294. In *Bahl*, the plaintiff, an Indian, argued that he was discharged because of his race—not because of alleged inadequate performance. Notably, the decisionmaker supervising the plaintiff had "clearly implied that he wanted to get rid of [the plaintiff] because he was ... Indian." *Id.* at 1293. Nonetheless, the *Bahl* court ruled that comments alone could not defeat summary judgment "unless they are both proximate and related to the employment decision ...." *Id.*

First, in the case at bar, Mr. Brown asserts that Ms. Campbell's and Mr. Sims' purported reasons for placing him on emergency suspension on March 24, 1995, were lies.[12] Mr. Brown does not dispute that he

---

**12.** The Notice of Emergency Placement in Off Duty Status reads as follows: "It appears that on March 23, 1995 that [Mr. Brown was] involve[d] in a[ ] physical altercation with another employee while on the clock." (Pl.'s 12(N)(3)(b), Ex. M.)

was involved in a physical altercation, but he argues that neither Ms. Campbell nor Mr. Sims knew he was on the clock during the fight, until Mr. Sims produced "clock ring reports" at his deposition on October 17, 1997. (Pl.'s 12(N)(3)(b) ¶ 38.) However this is inconsistent with what Mr. Brown testified to in his deposition. Mr. Brown stated that, after the altercation with Ms. Woodley on March 23, 1995, he had to obtain his time card from Ms. Campbell before he could clock out. (Def.'s 12(M), Ex. 1 at 26.) Since Ms. Campbell was in possession of Mr. Brown's time card and he was indeed on the clock, it cannot be inferred that Ms. Campbell's or Mr. Sims' reasons for suspending him were lies.

Second, there is no evidence to suggest that Ms. Glenn's or Mr. Sims' reasons for removing Mr. Brown for assaulting another employee while in postal uniform were lies.[13] For purpose of this summary judgment motion, this Court accepts as true that Mr. Brown was not the aggressor in the fight on March 23, 1995. However, this does not preclude Ms. Glenn's or Mr. Sims' belief that Mr. Brown was the aggressor: It is possible that both supervisors made a mistake when they concluded that Mr. Brown assaulted Ms. Woodley. A mistake is not a lie. Further, Mr. Brown provides no evidence that Ms. Glenn or Mr. Sims lied in the May 6, 1995, Notice of Removal.

Third, Mr. Brown generally argues that the total lack of discipline Ms. Campbell, Ms. Glenn, and Mr. Sims gave to Ms. Woodley is indirect evidence of intentional discrimination. However, as this Court has previously stated, Ms. Woodley was neither on the clock at the time of the altercation nor under the authority of the Austin Station supervisors.

Mr. Brown has provided no evidence to controvert these facts.

Fourth, Mr. Brown argues that Ms. Campbell's "discriminatory remarks" are evidence of intentional discrimination. Unlike the statements in *Bahl*, that clearly implied a discriminatory animus,[14] Ms. Campbell's statements of "why don't you act like a man," or "be a man about it," do not imply a negative attitude towards men. Even in *Bahl*, the discriminatory statements on their own were not sufficient to survive summary judgment. However, in *Huff*, summary judgement did not survive because the discriminatory comments did not stand alone, but were presented with additional evidence of pretext. In contrast, in the instant case, Mr. Brown relies exclusively on two isolated statements to show a genuine issue of material fact. Further, Mr. Brown cannot even remember in what circumstances Ms. Campbell's comments were made. These comments do not appear to be at all related to the adverse employment decision made by the Austin Station supervisors.

In sum, Mr. Brown is unable to show that the legitimate reasons the Defendant provided for terminating him were merely pretextual. This Court is unpersuaded that the Defendant discriminated against Mr. Brown because he is male. Mr. Brown has failed to meet his burden of proof.

## II. *Challenge to the Arbitrator's Award*

Count II of Mr. Brown's Complaint challenged the arbitrator's award and requests a reversal of that award. Since Mr. Brown has failed to respond to the Defendant's motion for summary judgment on Count II, this Court concludes that Mr. Brown does not

---

**13.** The Notice of Removal dated May 6, 1995, reads as follows:

> On March 23, 1995, you physically assaulted employee Asyia Woodley while in postal uniform. You and Ms. Woodley walked to the Amoco Gas Station, while arguing about some money she allegedly owed you for a coat. You became enraged, and threw her to the ground, and began kicking her and hitting her. Your actions were witnessed by customers at the gas station. You were also calling her names, while telling her to give you the coat or take you to cash your check so you could return her the initial fifty dollars she paid you so she

could return the coat. Such conduct cannot be condoned.

(Pl.'s 12(N)(3)(b) ¶ 47.)

**14.** The defendants referred to the plaintiff, an Indian, as " 'those kind of people.' " *Bahl,* 115 F.3d at 1289. Also, a supervisor testified that " '[s]hort of actually coming out and using the words we just want to get rid of him because he's an Indian, [the defendants] said everything else.' " *Id.* The defendants also criticized the plaintiff, saying that he had to " 'think Indian first' " even though he was fluent in English and no one else had voiced complaints about his speech. *Bahl,* 115 F.3d at 1289.

wish to contest that portion of the Defendant's motion. Furthermore, Article 15.4 of the collective bargaining agreement covering Mr. Brown states that "[a]ll decisions of an arbitrator will be final and binding." (Def.'s 12(M)(3), Ex. 8, Art. 15.4.) Additionally, the Seventh Circuit Court of Appeals will not set aside an arbitrator's award for error. *See Miller v. Runyon*, 77 F.3d 189, 193 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 316, 136 L.Ed.2d 231 (1996). In his Complaint, Mr. Brown argued that the arbitrator's award was unsupported by substantial evidence. (Compl. at ¶ 33.) However, this blanket statement does not raise any genuine issues of material fact.

### CONCLUSION

There are no genuine issues of material fact as to Mr. Brown's claims of sex discrimination. The Defendant is entitled to judgment as a matter of law, on both counts of the Complaint.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment be, and the same hereby is, **GRANTED**. The Complaint is dismissed with prejudice.