**Exie JENKINS–ALLEN, Plaintiff,**

v.

**POWELL DUFFRYN TERMINALS, INC., Defendant.**

**No. 96 C 5253.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 19, 1998.

---

Peter F. Ferracuti, Peter C. Bobber, Law Offices of Peter F. Ferracuti, Ottawa, IL, for Plaintiff.

Adrianne C. Mazura, Tracy Lee Bradford, Rudnick & Wolfe, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

Plaintiff, Exie Jenkins–Allen, filed suit against defendant, Powell Duffryn Terminals, Inc. ("Powell"), alleging race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, sex discrimination and retaliation in violation of Title VII, and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Powell moves for summary judgment on all claims. For the

reasons set forth below, Powell's motion is granted in part and denied in part.

*Background*

The undisputed facts in this case are as follows. Ms. Jenkins–Allen was hired by Powell as a seasonal employee on September 7, 1993. (12(M) St. ¶ 5). She was subsequently laid off and then recalled on June 23, 1994. (*Id.*) On December 29, 1994 she became a full-time employee in the "Utility" job classification. (*Id.*)

In March, 1995, Ms. Jenkins–Allen indicated to Ron Wright, her supervisor, that she hurt her wrists. (*Id.* ¶ 7). Mr. Wright sent her to the Southwest Industrial Clinic (the "Clinic"). (*Id.*) That same day, she returned to work with light duty restrictions which were honored until May 25, 1995 when she began a workers' compensation leave of absence as a result of her injury. (*Id.* ¶¶ 7, 9).

During the leave of absence, Ms. Jenkins–Allen had carpal tunnel release surgery on her right arm on May 31, 1995 and surgery on her left arm in October, 1995. (*Id.* ¶ 10). Between the surgeries, she bid for a filler operator position that Powell posted on June 6, 1995. (*Id.* ¶ 11). Powell wanted to fill the position as soon as possible and did not give Ms. Jenkins–Allen the position because she was on a leave of absence. (*Id.*) She did not return to work until January, 1996, after she was released to regular work without restriction on December 28, 1995. (*Id.* ¶ 12).

Upon Ms. Jenkins–Allen's return to work she began training as a forklift driver on January 18, 1996. (*Id.* ¶ 13). The standard training time for forklift drivers is three months. (*Id.*) She became a forklift driver on May 6, 1996, having received two additional weeks of training. (*Id.*)

On February 9, 1996, Ms. Jenkins–Allen filed a charge of discrimination ("February 9 Charge"). (*Id.* ¶ 14). She alleged that Powell discriminated against her on the basis of her race and sex by (1) providing her with insufficient training and (2) failing to promote her to the filler operator position.

On April 25, 1996, Ms. Jenkins–Allen complained of pain in both hands while she was working on a production line. (*Id.* ¶ 15).

She went to the Clinic and returned that same day with light duty restrictions. (*Id.*) She should "avoid fast-moving machinery" and "no pulling, pushing, grasping—fine manipulative work w[ith] hands." (12(M) St. Ex. D, April 25, 1996 Clinic Progress Report; 12(N) Resp. ¶ 15). The restrictions were clarified on April 29, 1996 as follows: "Ms. Allen may do fork lift driving without restrictions. She does not have a lifting restriction in regard to weight. She should avoid repetitive work, regardless of weight, for more than 1–2 hours per day." (12(M) St. ¶ 16, Ex. D, April 29, 1996 Letter from Dr. Yen; 12(N) Resp. ¶ 16).

On June 5, 1996, Ms. Jenkins–Allen again complained of pain in her upper neck, back, and both hands. (12(M) St. ¶ 18). She was sent to the Clinic and returned to work that same day under the same light duty restrictions outlined on April 29, 1996. (*Id.*)

On July 5, 1996, at 7:00 a.m., Ms. Jenkins–Allen found her forklift between two rows of finished product. (*Id.* ¶ 21). She contacted the Operations Manager, Randy Richmond, to inform him that her forklift was not in its proper place and was out of gas. (*Id.*) Mr. Richmond immediately filled her forklift with gas and drove it from between the rows of finished product. (*Id.*) Ms. Jenkins–Allen returned to work. (*Id.* ¶ 22).

At approximately 9:00 a.m. that same day, Ms. Jenkins–Allen told Mr. Wright that she was not feeling well. (*Id.* ¶ 23). Mr. Wright allowed her to go home and informed Mr. Malec of that fact. (*Id.*) Ms. Jenkins–Allen called Mr. Wright on July 8 and 9, 1996, stating that she would not be in to work because she was going to the doctor. (*Id.* ¶ 25). On July 10, 1996, she called her other supervisor, Tim Burke, and stated that she would not be reporting to work. (*Id.* ¶ 28). Both supervisors informed Mr. Malec of the calls. (*Id.* ¶¶ 25, 28).

During the same period, Ms. Jenkins–Allen called the President of Powell, Tony Tucker, to inform him of the "harassment" at Powell. (*Id.* ¶ 26). Mr. Malec called her at home to find out why she was trying to reach the President. (*Id.* ¶ 27). The parties dispute what was said during that conversation.

On July 11, 1996, Ms. Jenkins–Allen filed a second charge of discrimination ("July 11 Charge"). (*Id.* ¶ 30). She alleged that she was discriminated against on the basis of her race when Powell failed to investigate damage to her work vehicle on July 5, 1996. She further alleged that she was threatened with discharge in retaliation for filing her February 9 Charge.

On July 15, 1996, a meeting was held with Ms. Jenkins–Allen, her union representative, Ed O'Donnell, Mr. Malec, and Mr. Richmond. (*Id.* ¶ 32). Mr. Malec stated that he had received three different stories about her absence from work: she was sick, she was harassed, she was injured on the job and on workers' compensation. (*Id.*) Another meeting was held on July 16, 1996 and at that time, Ms. Jenkins–Allen was advised that there were problems with her numerous and contradictory justifications for her absence and with her failure to immediately report her alleged injury as required by the company's rules and procedures. (*Id.* ¶ 33). On July 19, 1996, Ms. Jenkins–Allen was terminated. (*Id.* ¶ 34). She filed a charge of discrimination on August 6, 1996 ("August 6 Charge") alleging disability discrimination and retaliation. (*Id.* ¶ 35). She stated that Powell failed to accommodate her disability, suspended her, and then discharged her because of her disability. She further alleged that Powell fired her in retaliation for filing her previous two charges of discrimination.

### Race and/or Sex Discrimination

■ A plaintiff may prove discrimination under Title VII or § 1981 by presenting either direct or circumstantial evidence of discrimination. *Oates v. Discovery Zone,* 116 F.3d 1161, 1169–70 (7th Cir.1997). Direct evidence is "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736

(7th Cir.1994). Ms. Jenkins–Allen claims that there is direct evidence in this case of race discrimination. She states that she heard her supervisor, Mr. Wright, tell another employee "I told them they would have trouble when they hired that black son of a bitch." [1] (12(N) St. ¶ 1). However, "[t]o be probative of discrimination, isolated comments must be contemporaneous with the [discriminatory action] or causally related to the [discriminatory action] decision making process." *Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir.1996). Ms. Jenkins–Allen does not state when this comment was made or whether it was related to the decision making process in any of the alleged discriminatory actions. Thus, this comment is insufficient to support a finding of discriminatory intent.

■ Since Ms. Jenkins–Allen cannot prove discrimination through direct evidence, she must prove discrimination under the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden-shifting approach. *Oates,* 116 F.3d at 1170. She must first establish a prima facie case of discrimination. *Id.* If she succeeds, Powell must articulate a legitimate, nondiscriminatory reason for its action. *Id.* The burden then shifts back to Ms. Jenkins–Allen to prove that Powell's stated reason is merely a pretext for discriminatory action. *Id.*

### A. Failure to Promote

■ Ms. Jenkins–Allen claims that she was discriminated against on the basis of her race and sex when she was not promoted to the position of filler operator in June, 1995. In her 12(N) Response, however, she admits that the filler position needed to be filled immediately and that she did not receive the position because she was on a leave of absence from May, 1995 until January, 1996. (12(N) Resp. ¶¶ 9, 11, 12). By this admis-

---

1. Ms. Jenkins–Allen also states that Mr. Wright referred to other employees as "stupid Mexicans and dumb pollocks." (12(N) St. ¶ 2). Since Ms. Jenkins–Allen is neither Mexican nor Polish, this statement is not probative of whether he discriminated against her because of her race, sex, or disability. Furthermore, she states that Powell "[a]llowed its employees to harass the plaintiff with a black doll made from a garbage bag and

refused to investigate." (Pl .'s Mem. of Law in Supp. of the Pl.'s Objection to Summ. J., at 1). This statement, however, is not included in her 12(N) Response or Statement of Additional Facts, nor does she cite to any evidence in the record. Thus, this statement is not properly before the court and cannot be considered. *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1313 (7th Cir.1995).

sion, she concedes that there was no discrimination in Powell's decision not to promote her to filler operator. Thus, my inquiry is at an end and this claim is dismissed.

### B. Failure to Train

■ Ms. Jenkins–Allen claims that Powell failed to give her as much training in forklift driving as non-Black males. To establish a prima facie case of race or sex discrimination for failure to train, Ms. Jenkins–Allen must prove that (1) she is a member of a protected class, (2) she satisfactorily performed the duties required in her position, (3) Powell had a policy of providing on-the-job training, and (4) she was not provided this training under circumstances giving rise to an inference of discrimination. *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 371 & n. 5 (7th Cir.1997).

Ms. Jenkins–Allen contends that her training was deficient because unlike other employees, she was not allowed to train full-time for the forklift driver position. She was trained only occasionally during the three month period. She does not state, however, what type of training she should have received nor does she identify a single employee, let alone a male or non-Black employee, who received better or more complete training. Furthermore, it is undisputed that the standard training time to become a forklift driver is three months. Ms. Jenkins–Allen received three months plus an additional two weeks of training. After the additional two weeks, she became a forklift truck operator. Based on these facts, Ms. Jenkins–Allen has failed to establish her prima facie case. She has not pointed to any facts or circumstances surrounding her training that give rise to an inference of discrimination.

2. Ms. Jenkins–Allen also claims that on separate occasions the car she drove to work was vandalized. (12(N) St. ¶ 13). One time the lug nuts were missing from her wheels. (*Id.*) On another occasion her car was covered with oil. (*Id.*) She does not state, however, when these two incidents occurred or provide any further details. Thus, it is impossible to determine how these two incidents are related, if at all, to the July 5 incident, or whether they are encompassed in her July 11 Charge.

### C. Failure to Investigate

■ Ms. Jenkins–Allen filed a charge of discrimination on July 11, 1996 alleging that on July 5, 1996, her work vehicle was damaged and that Powell failed to investigate. On July 5, her forklift was moved from its original position to a spot between two rows of finished product and was out of gas.[2] She claims that the failure to investigate this incident amounted to race discrimination, presumably with respect to the terms and conditions of her employment.[3]

■ To prevail on her failure to investigate claim, Ms. Jenkins–Allen "must prove by a preponderance of the evidence that [Powell] made an adverse employment decision with respect to [her] because of race, color, religion, sex, or national origin." *Patel*, 105 F.3d at 370.

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993). Ms. Jenkins–Allen has not pointed to any material adverse change in her employment as a result of the failure to investigate. Consequently, this claim is dismissed.

### Disability Discrimination

■ "The ADA prohibits an employer from discriminating against 'a qualified individual with a disability because of the disabil-

3. Title VII makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

892

ity of such individual....'" *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 792 (7th Cir.) (quoting 42 U.S.C. § 12112), *cert. denied,* — U.S. —, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997). To be covered by the ADA, a plaintiff must first prove that she has a disability. A person is disabled who either (1) has a physical or mental impairment that substantially limits one or more of her major life activities or (2) has a record of such impairment or (3) is regarded as having such an impairment. *Leffel,* 113 F.3d at 792 (citing 42 U.S.C. § 12102(2)). "The determination as to whether an individual is [disabled] must be made as of the time of the employment decision." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir.1996).

▮▮▮ Powell argues that Ms. Jenkins–Allen is not disabled within the meaning of the ADA because she does not have a physical or mental impairment which substantially limits one or more of her major life activities. EEOC regulations define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "'Substantially limits' means that the person is either unable to perform a major life function or is 'significantly restricted as to the condition, manner or duration' under which the individual can perform a particular life function, as compared to the average person in the general population." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 523 (7th Cir. 1996) (quotations omitted).

Ms. Jenkins–Allen admits that since her termination, she has been able to care for herself—she does her laundry, cleans her house, goes grocery shopping by herself, and continues to socialize with her friends. (12(M) St. ¶ 39). She has traveled to Bolingbrook, Aurora, and Naperville in search of employment. (*Id.* ¶ 40). She has applied for various positions including a forklift driver, forklift assembly, janitor, machine operator, food service manager, mail sorter, security guard, and factory worker, as well as positions in warehouse packaging and production. (*Id.*) In November, 1996, she worked as a packer for one week. (*Id.* ¶ 41). In April, 1997, she worked for Midwest Temporary

Services as a machine operator, mold trimmer, inspector, and unloader. (*Id.* ¶ 42). Currently she is working for Raco Security as a security guard. (*Id.* ¶ 43). Since no major life activity was substantially impaired immediately after Ms. Jenkins–Allen's termination, the reasonable inference one draws from this evidence is that Ms. Jenkins–Allen was not disabled at the time of her discharge in July, 1996. Ms. Jenkins–Allen has not presented any evidence to the contrary. Thus, she does not have a disability which substantially limits her major life activities.

▮▮▮ Furthermore, Ms. Jenkins–Allen does not have a record of impairment nor was she regarded as having an impairment. The record of impairment method extends coverage under the ADA

> to persons 'who ha[ve] a history of, or ha[ve] been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.' ... This would include people who have recovered from previously disabling conditions (cancer or coronary disease, for example) but who may remain vulnerable to the fears and stereotypes of their employers.

*Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir.1998) (quoting 29 C.F.R. § 1630.2(k)). In this case, although Ms. Jenkins–Allen was on a workers' compensation leave of absence for seven months in 1995 because of carpal tunnel syndrome, she had surgery on both her arms during that period and returned to work in January, 1996 without any restrictions. She was fully recovered, and although she complained of pain in April, 1996, there is no evidence that the pain substantially limited any of her major life activities.

▮▮▮ Finally, Powell did not regard Ms. Jenkins–Allen as disabled. "A person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment.... The focus is on the impairment's effect upon the attitudes of others." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (citing *Byrne v. Board of Educ., Sch. of West Allis–West*, 979 F.2d 560, 566

(7th Cir.1992)) (citation omitted). In this case, when Ms. Jenkins–Allen returned to work in January, 1996, she was given the opportunity to train as a forklift driver and she worked on the production line. When she complained of pain, the doctor limited repetitive work and she returned to work. There is no evidence that subsequently her supervisors treated her as having an impairment that substantially limited her ability to work.

In summary, Ms. Jenkins–Allen was not disabled within the meaning of the ADA and cannot bring claims of disability discrimination.

### Retaliation

 Ms. Jenkins–Allen claims that Powell retaliated against her for filing her February 9 and July 11 Charges. She does not present any direct evidence of retaliation but attempts to prove her retaliation claims through the *McDonnell Douglas* burden-shifting test. *See Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1014 (7th Cir.1997) (finding that *McDonnell Douglas* applies to retaliation claims).

 To establish a *prima facie* case of retaliation, Ms. Jenkins–Allen must show (1) that she engaged in statutorily protected expression, (2) that she suffered an adverse action by her employer, and (3) that there is a causal link between the protected expression and the adverse action. *Id.* It is undisputed that Ms. Jenkins–Allen engaged in statutorily protected expression. As a result of that expression, she claims that Powell threatened her with discharge and then discharged her.

### A. Threat of Discharge

 Ms. Jenkins–Allen claims that she was retaliated against for filing her February 9 Charge in that she was threatened with discharge. She does not state, however, how the threat of discharge was an adverse employment action which materially affected the

4. Ms. Jenkins–Allen also claims that she was suspended on July 16, 1996 in retaliation for filing the July 11 Charge. Neither party has presented any facts related to the suspension.

terms and conditions of her employment. Her actual discharge was the adverse action. Thus, she does not have a claim for retaliation based on these threats.

### B. Discharge [4]

 On July 11, 1996, Ms. Jenkins–Allen filed her second charge of discrimination. Eight days later, on July 19, 1996, she was discharged. Powell argues that Ms. Jenkins–Allen cannot establish a causal connection between the filing of her discrimination charge and her discharge. "[S]uspicious timing, [however,] does constitute circumstantial, or indirect, evidence to support a claim of [retaliation]." *Id.* The short time span between the filing of her July 11 Charge and her termination is sufficiently suspicious to establish a causal connection. Thus, Ms. Jenkins–Allen has established her prima facie case of retaliatory discharge.

The burden then shifts to Powell under *McDonnell Douglas* to articulate a non-retaliatory reason for discharging Ms. Jenkins–Allen. Powell offers a legitimate, nondiscriminatory reason for her discharge: that Ms. Jenkins–Allen misrepresented facts and that she violated the company's safety rules and procedures. Mr. Malec stated in his affidavit that Ms. Jenkins–Allen gave three contradictory reasons for her absence from work: she claimed that she was sick; she claimed that she went home because she was harassed at work; and she claimed that she was injured on the job and off on workers' compensation. Eventually, she stated that she was on workers' compensation, which meant that she violated the company's safety rules by not reporting her injury.

Ms. Jenkins–Allen claims that Powell's reasons are pretextual because she never misrepresented any facts to Mr. Malec. She states that she consistently gave the same reason for her absence: that her arms hurt, and she never stated that she was injured on the job. Since she was not injured on the job, there was no reason to report the injury.

Instead, they focus on the circumstances surrounding Ms. Jenkins–Allen's discharge. Consequently, I only examine her discriminatory discharge claim.

The ultimate resolution of this claim depends on which witness is more credible. The question of who to believe is a fact question for the jury which cannot be resolved at summary judgment.

## Conclusion

For the reasons stated above, Powell's motion for summary judgment is granted in part and denied in part. Ms. Jenkins–Allen may proceed with her retaliatory discharge claim. All other claims are dismissed.