**Aleeta MURAWSKI, Plaintiff,**

v.

**TRI SERVICE, INC., Defendant.**

No. 97 C 6110.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 12, 1999.

Thomas J. Rehwaldt, Attorney at Law, Steven Ackerman, Attorney at Law, Chicago, IL, for plaintiff.

Timothy Michael McLean, Thomas Urban Hipp, Heroux, Clingen, Callow, Wolfe & McLean, Wheaton, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

KEYS, United States Magistrate Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment on Counts I and II, and Plaintiff's Motion for Summary Judgment on Count II. For the following reasons, this Court denies both the Defendant's and Plaintiff's motions.

### *BACKGROUND*

Plaintiff Aleeta Murawski worked for Defendant Tri Service, Inc. as an Inside Sales Assistant from February 6, 1996, through January 10, 1997, at which time she was terminated. (Def.'s 12(M) ¶ 2, 44.) Ms. Murawski's duties included writing price quotes to manufacturers and customers, maintaining sales literature inventory, providing customers with sales materials, working on long-term projects and "writing up jobs for the equipment Tri Service manufactured." (Def.'s 12(M) ¶ 2.)

Tri Service hired Ms. Murawski to replace Michelle Johnson, who left Tri Service in February 1996 to take a job with another employer, after having worked there since 1993. (Def.'s 12(M) ¶¶ 7, 9.) Ms. Johnson had trained Ms. Murawski for two weeks prior to her leaving Tri Service and provided her with several pages of instructions as to how to perform the job. (Pl.'s 12(N) ¶ 9.) Susan Cilia directly supervised Ms. Murawski (Def.'s 12(M) ¶ 5) and "was responsible for assessing Ms. Murawski's performance and evaluating her work." (Def.'s 12(M) ¶ 10.) Fred Valentini is "Owner and Vice President of Sales and Marketing" and was Ms. Cilia's supervisor. (Def.'s 12(M) ¶ 15, 18(c).)

In August 1996, Ms. Murawski asked Ms. Cilia whether she was a "keeper." (Def.'s 12(M) ¶ 62.) Ms. Murawski explained to Ms. Cilia that she was asking her whether Tri Service intended to keep her on as an employee, to which Ms. Cilia responded affirmatively. (Pl.'s 12(N) ¶ 62; Def.'s 12(M) ¶ 62, Ex. 15 at 170.) On September 5, 1996, Ms. Murawski sent a memo to Ms. Cilia and Mr. Valentini asking them to reconsider Ms. Cilia's prior refusal to give her a review and salary increase.[1] (Def.'s 12(M) ¶ 15.)

Ms. Cilia did, however, formally review Ms. Murawski on November 1, 1996. (Def.'s

---

1. Ms. Murawski had expressed concern about not getting a review in June of 1996, although she did admit that Ms. Cilia and Mr. Valentini told her "reviews are done on a yearly basis...." (Pl.'s Ex. P, Ex.4.)

12(M) ¶ 19.) Ms. Cilia brought a two to three page document ("Review") to the review meeting which listed items pertaining to Ms. Murawski's job that Ms. Cilia discussed with her. (Def.'s 12(M) ¶ 19; Pl.'s 12(N) ¶ 19.) Ms. Cilia pointed out areas in which Ms. Murawski needed improvement, such as time management, handling phone calls, and possibly working overtime to finish long-term projects.[2] (Pl.'s 12(N) ¶ 20; Def.'s Ex. 15 at 159–60.) Ms. Cilia also prepared Follow–Up Notes after Ms. Murawski's review, and they discussed certain items on the list concerning a few of Ms. Murawski's assignments.[3] (Pl.'s 12(N) ¶ 24.)

At a sales meeting on December 13, 1996, Mr. Valentini announced that Ms. Cilia would begin maternity leave in March 1997. (Pl.'s 12(N) ¶ 18.) He also announced that Ms. Murawski would receive more work as a result. (Pl.'s Ex. L at 115.) A few days later, on December 18 or 19, Ms. Murawski told Ms. Cilia that she suffers from multiple sclerosis ("MS"). (Def.'s 12(M) ¶ 27.) Ms. Murawski had not disclosed her MS to anyone at Tri Service serving in a managerial capacity before this time. (Pl.'s 12(N) ¶ 30.) Ms. Murawski admitted that her MS had no effect on her performance. (Def.'s Ex. 15 at 55.) However, she did explain to Ms. Cilia that, on one occasion, she had needed to use a typewriter, because her MS flared up and prevented her from writing legibly. (Def.'s 12(M) ¶ 34; Pl.'s 12(N) ¶ 31.) Ms. Cilia allegedly responded to Ms. Murawski's MS disclosure by asking her "What about the job?" (Def.'s Ex. 15 at 44.) Ms. Murawski informed Ms. Cilia, that, "despite her MS condition, she was doing her job and would continue doing it." (Def.'s 12(M) ¶ 29.) Ms. Murawski also told Ms. Cilia that her doctor had advised her not to "overwork," because she has the form of MS that flares up. (Pl.'s 12(N) ¶ 31, Ex. D at 38.)

Tri Service terminated Ms. Murawski on January 10, 1997, at a meeting attended by Ms. Murawski, Ms. Cilia, and John Richards, CFO of Tri Service. (Def.'s 12(M) ¶¶ 44, 18(a).) Tri Service claims it terminated Ms. Murawski because of her inadequate performance. (Def.'s 12(M) ¶ 44.) Ms. Murawski claims she was never told that her performance was unsatisfactory. (Pl.'s 12(N) ¶¶ 3, 14.)

Subsequent to Ms. Murawski's termination, Tri Service rehired Ms. Johnson, a non-disabled individual, for the Inside Sales Assistant position. (Pl.'s 12(N) Add. Facts ¶ 14.) Ms. Murawski claims that Tri Service terminated her because she suffers from MS. (Def.'s 12(M) ¶ 61.)

On January 28, Ms. Murawski filed a Charge of Discrimination with the EEOC, alleging that Tri Service discriminated against her by terminating her after learning that she had a disability. (Def.'s 12(M) ¶ 52.) The EEOC issued Ms. Murawski a Notice of Right to Sue (Def.'s 12(M) ¶ 54), and on August 28, 1997, she filed suit against Tri Service for discriminatory discharge. (Def.'s 12(M) ¶ 55.) She later amended her complaint and included a second count, charging that Tri Service failed to reasonably accommodate her disability. (Def.'s 12(M) ¶ 56.)

## DISCUSSION

### I. Standard for Summary Judgement

Summary judgement is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

---

2. Ms. Murawski testified that the Review was not a list of criticisms but "a reiteration" of her job duties and Ms. Cilia's way to emphasize to her "[t]his is what you are doing. This is what you should continue to do." (Def.'s Ex. 15 at 156.) Ben Day, the "Manager of Production/Engineering for Tri Service" (Def.'s 12(M) ¶ 18(d)), testified that the Review looked like a list of job responsibilities and "not an evaluation;" rather "it's just an outline of what [Ms. Cilia] may expect from you." (Pl.'s Ex. E at 61.)

3. Exactly when Ms. Cilia prepared the Follow–Up Notes, however, is unclear (Def.'s 12(M) ¶ 24, Pl.'s 12(N) ¶ 24), as is the question of whether the Follow–Up Notes actually communicate Ms. Cilia's dissatisfaction with Ms. Murawski's performance. (Def.'s 12(M) ¶ 36; Pl.'s 12(N) ¶ 36.) Ms. Murawski does not doubt that Ms. Cilia's Review and page one of the Follow–Up Notes were her honest opinions. (Def's 12(N) Reply ¶ 36; Ex. 15 at 159–60.) However, Ms. Murawski asserted that she never saw page two of the Follow–Up Notes until litigation in this case began, and did not know what Ms. Cilia thought when she wrote page two. (Def.'s Ex. 15 at 160.)

judgement as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Initially, the moving party bears the burden of showing that the record contains no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The governing substantive law establishes which facts are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The non-moving party must present more than a "metaphysical doubt as to the material facts" to survive summary judgment. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Additionally, "mere conclusory" allegations are not enough. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir.1998). The non-moving party will not survive summary judgement if she cannot present sufficient evidence to support each element of her case on which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

Courts do not make "credibility determinations nor choose between competing inferences" at the summary judgment stage. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir.1993). Further, the court must view the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. In addition, pursuant to Northern District of Illinois Local Rule 12(N), the parties must support all disputed facts with "specific references to ... parts of the record...." The Seventh Circuit has articulated that courts need not "scour the record" in an attempt to locate the relevant information supporting the 12(N) claims. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994).

## II. Standard for Analysis of Discriminatory Discharge Claim

The Americans with Disabilities Act of 1990 ("ADA") prohibits employers from discriminating against qualified individuals with a disability. 42 U.S.C. § 12112(a)(1994). The ADA recognizes two types of discrimination: discriminatory discharge and failing to provide reasonable accommodations.[4] *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir.1996)(citing 42 U.S.C. § 12112(a), (b)(5)(A)).

A plaintiff may use either direct or indirect evidence in order to establish a discriminatory discharge. *Leffel v. Valley Fin. Serv.*, 113 F.3d 787, 792 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997). Direct evidence requires the employer to acknowledge that a discriminatory motive caused the plaintiff's termination. *Troupe v. May Dept. Stores, Co.*, 20 F.3d 734, 736 (7th Cir.1994). Circumstantial evidence falls under the rubric of direct evidence, but instead of an acknowledgment of discrimination by the employer, circumstantial evidence "provide[s] a basis for drawing an *inference* of intentional discrimination." *Id.* (emphasis added). In using direct or circumstantial evidence, the court determines whether "but for" the disability, the defendant would not have terminated the plaintiff. *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1121 (7th Cir.1998). On the other hand, indirect evidence requires the use of the burden-shifting method pioneered in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Leffel*, 113 F.3d at 792.

Regardless of which type of evidence the plaintiff presents, the Court must ultimately determine if the plaintiff has raised a genuine issue of material fact as to whether her "disability motivated [the defendant's] decision to fire [her]." *Matthews v. Commonwealth Edison Co.*, 941 F.Supp. 721, 725 (N.D.Ill.1996). Ms. Murawski argues that

4. Ms. Murawski's amended complaint raises both types of claims (Am.Compl.¶¶ 15, 24), and both parties seek summary judgment as to her reasonable accommodation claim. (Mem. Sup. Def.'s Mot. Summ. J. at 15; Pl's Resp. Mem. Sup. Pl.'s Mot. Summ. J. at 15.) As discussed below, the Court finds it unnecessary to discuss Ms. Murawski's reasonable accommodation claim (Count II) at this time, because a genuine issue of material fact exists as to her discriminatory discharge claim (Count I).

she has both circumstantial and indirect evidence to support her claim. While the direct method sufficiently establishes a genuine issue of material fact in this case, the Court will analyze the facts under both the direct and indirect methods in order to address both the plaintiff's and defendant's respective arguments.

### A. Circumstantial Evidence

*Troupe* identified three types of circumstantial evidence.[5] 20 F.3d at 736. The first type is a "mosaic of evidence" consisting of "suspicious timing, ambiguous statements ... and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* at 736–37. The second type of evidence reveals how non-disabled employees, otherwise similarly situated to the plaintiff, received better treatment. *Id.* at 736. The final type of circumstantial evidence shows that the employer replaced the qualified plaintiff with a non-disabled individual, and that the employer's reason is a mere pretext for discrimination. *Id.* The court held that each type of evidence is sufficient by itself to support judgment for plaintiff as long as no other evidence could undermine plaintiff's proof. *Id.* Further, the Seventh Circuit has held that, in order to find that suspicious timing of events is evidence of discrimination, a causal connection between the announcement of the disability and the termination must exist. *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1011 (7th Cir.1997).

Although analyzed using the indirect *McDonnell Douglas* method in a retaliation suit, it has been held that suspicious timing alone constituted circumstantial evidence of discriminatory discharge in a plaintiff's case. *Jenkins–Allen v. Powell Duffryn Terminals, Inc.,* 18 F.Supp.2d 885, 893 (N.D.Ill.1998). The court found there that plaintiff Jenkins established a causal connection between her act of filing a charge of discrimination and her termination eight days later. *Id.*

Conversely, in *Uhl v. Zalk Josephs Fabricators, Inc.,* 121 F.3d 1133, 1136 (7th Cir. 1997) the Seventh Circuit found no suspicious timing in a plaintiff's disclosure of his diabetes and his demotion two years later. The court reasoned that suspicious timing is plausible when events occur "over weeks or months ... but not once per year with no other supposed discrimination occurring in between." *Id.* Further, the court in *Foster v. Andersen, L.L.P.,* No. 96–C5961, 1997 WL 802106, at *7 (N.D.Ill.Dec.29, 1997) held that suspicious timing alone was not enough to infer discriminatory motive, because plaintiff had not set forth an adequate "mosaic" of circumstantial evidence. In that case, the defendant warned the plaintiff that it would terminate her if she violated its policy again, and the court found that such a warning overshadowed any evidence of suspicious timing. *Id.*

▆ Ms. Murawski argues that her termination, coming only three *weeks* after disclosing that she had MS, constitutes suspicious timing and satisfies *Troupe*'s first type of circumstantial evidence.[6] (Resp. at 5) (em-

---

5. Recently, the Seventh Circuit held that "direct evidence may not rely on 'inference or presumption.'" see *Brown v. Runyon,* 2 F.Supp.2d 1062, 1067 (N.D.Ill.1998)(citing *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 443 (7th Cir. 1997); *Plair v. E .J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir.1997); *Bahl v.. Royal Indemnity Co.,* 115 F.3d 1283, 1290 (7th Cir.1997)). The Seventh Circuit's limitation of *Troupe*'s holding could jeopardize the application of *Troupe*'s definition of circumstantial evidence in future cases. Further, district courts have criticized *Troupe* as well, because it "includes elements of the indirect burden-shifting method...." *Brown,* 2 F.Supp.2d at 1067 (see also *Jones v. City of Elgin,* No. 96–C6920, 1998 WL 259538, at *7–8 (N.D.Ill. May 13, 1998) citing several district court cases criticizing *Troupe*'s expansive defini-

tion of circumstantial evidence and the difficulty in distinguishing between direct and indirect proof of discrimination.)

This Court notes the various criticisms of *Troupe* but acknowledges that it still remains good law. Therefore, because Ms. Murawski uses circumstantial evidence to support her claim, the Court continues its analysis, cognizant of the confusion among the courts.

6. Ms. Murawski also argues that her replacement by a non-disabled individual is circumstantial evidence under *Troupe*'s third prong. (Resp. at 5). However, Ms. Murawski stops short of fully discussing her evidence. She asserts that her argument incorporates portions of the indirect test and would rather save that discussion until later. (Resp. at 5). This Court, therefore, saves

phasis added). She also attempts to establish a causal connection between her termination and her disclosure of her MS. Ms. Murawski points to the December 13, 1996, sales meeting where Mr. Valentini announced that she would receive more work as a result of Ms. Cilia's leave beginning in March 1997. This announcement, coupled with Mr. Valentini's testimony that he "anticipated" Ms. Murawski to be with the company in March 1997 (Pl.'s Ex. L at 115–16), could arguably indicate a satisfaction with Ms. Murawski's performance.

Unlike Ms. Foster, Ms. Murawski testified that she never received any warnings that her termination was imminent nor did she suspect that her job was in jeopardy. (Pl.'s 12(N) ¶ 36.) Further, Mr. Valentini admitted that he disapproved of rehiring Ms. Johnson in November. (Pl.'s Ex. L at 113.) In fact, Mr. Valentini testified that Tri Service had a policy against rehiring employees who previously resigned. (Pl.'s Ex. L at 113.) However, only three weeks after Ms. Murawski disclosed her MS, he apparently changed his mind, terminating Ms. Murawski and rehiring Ms. Johnson in her place. The sequence of events, beginning with the sales meeting and ending with Ms. Murawski's termination, with the only intervening event being her MS disclosure, are close enough in time to support an inference of discriminatory discharge.

Further supporting the argument of suspicious timing is Ms. Cilia's alleged response to Ms. Murawski's MS disclosure. Although Ms. Cilia denies asking "What about the job" (Def.'s 12(N) Reply ¶ 24), a genuine issue is raised as to what Ms. Cilia actually said. The court also finds suspicious timing in Mr. Valentini's "about-face" concerning rehiring Ms. Johnson—especially so soon after announcing that Ms. Murawski would have more responsibilities. Resolving these conflicting testimonies requires a credibility determination, which is inappropriate at the summary judgment stage.

Therefore, in viewing the facts in the light most favorable to Ms. Murawski, the court

finds that she has set forth a "mosaic" of circumstantial evidence sufficient to raise a genuine issue of material fact as to whether Tri Service terminated her because of her disability. Even if Ms. Murawski's circumstantial evidence is insufficient to establish discriminatory discharge, she may still have a claim under the indirect, burden-shifting method of proof.

**B. Indirect Method—*McDonnell Douglas***

Plaintiffs may use the burden-shifting method of analysis in *McDonnell Douglas* to present indirect evidence of discrimination under the ADA. *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797 (7th Cir.1995). Using *McDonnell Douglas,* a plaintiff must first show a prima facie case of employment discrimination. *Leffel,* 113 F.3d at 792. The burden then shifts to the defendant to establish a legitimate, non-discriminatory reason for terminating the plaintiff. *Id.* Once the defendant satisfies its burden, the plaintiff must show that the employer's reason is a mere pretext for discrimination. *Id.* The plaintiff will not survive summary judgment if she cannot show pretext. *McDonnell Douglas,* 411 U.S. at 807, 93 S.Ct. 1817. Although the burden shifts between the plaintiff and the defendant using the *McDonnell Douglas* method, the plaintiff ultimately has the burden of proving intentional discrimination by the employer. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*1. The Prima Facie Case*

█ The plaintiff must satisfy four elements to prove a prima facie case of discriminatory discharge: 1) she must be disabled within the meaning of the ADA; 2) she satisfied her employer's legitimate job expectations; 3) she was terminated; and 4) her disability is more likely than not the reason for her termination. *Leffel,* 113 F.3d at 794. Both parties agree that Ms. Murawski meets the first and third elements of the prima facie case. (Mem. Sup. Def.'s Mot. Summ. J.

its discussion of the third type of circumstantial evidence, and will analyze it under the indirect

method of analysis as well.

at 6.) Therefore, this Court accepts those elements as proven and will only analyze the remaining elements of the prima facie case.

### a. Meeting Employer's Legitimate Job Expectations

A plaintiff cannot show discrimination if she does not prove that she met her employer's legitimate job expectations. *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir.1997). Further, to show the legitimacy of a job expectation, "the court must determine whether the employer communicated those expectations to the employee...." *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 463 (7th Cir.1986). The employee cannot move on to the pretext stage by arguing that, even if she failed to meet the employer's legitimate expectations, she was fired for a discriminatory reason. *Coco,* 128 F.3d at 1179.

In *Fang v. Village of Roselle,* No. 95–C5175, 1997 WL 242905, at *3 (N.D.Ill. May 5, 1997) the court held that a genuine issue of material fact existed as to plaintiff's performance. There, the defendant claimed it terminated plaintiff because of his poor performance, but plaintiff asserted that defendant never informed him that his performance was inadequate. *Id.* Further, the record contained very little documentation of plaintiff's alleged inadequate performance. *Id.* The court also found it suspicious that defendant did not terminate plaintiff immediately, or at least closer to the time when defendant first claimed plaintiff's performance was inadequate. *Id.* Finally, the court found it suspicious that the plaintiff received a raise a few weeks after defendant claimed she wanted to terminate him. *Id.*

█ Similarly, Ms. Murawski alleges that Tri Service never informed her that her performance was unsatisfactory or that her job was in jeopardy. She also alleges that she never received any warnings that Tri Service might terminate her, nor did her personnel file contain any warnings. (Pl.'s 12(N) Add. Facts ¶ 7.) Ms. Murawski concedes to making occasional mistakes on quotes and that she sometimes failed to send them out in a timely manner (Def.'s 12(N) Reply ¶ 3.) Ms. Murawski also asserts throughout her testimony the importance of accuracy and timeliness of the quotes. (Def.'s Ex. 15 at 90, 99; Def.'s Supp. Ex. A at 89.) She admitted that Ms. Cilia brought certain matters to her attention which were important, and that those matters were Ms. Cilia's honest beliefs and opinions. (Def.'s Ex. 15 at 123–24.) Nonetheless, she contests whether Ms. Cilia ever "counseled" her or brought other matters to her attention, because she was unhappy with her performance. (Pl.'s 12(N) ¶ 24.)

The Follow–Up Notes, which purportedly show Ms. Cilia's continuing criticisms of Ms. Murawski, are not definitive proof that Ms. Murawski was not meeting Tri Service's legitimate expectations. Ms. Murawski does not doubt that Ms. Cilia's Review and page one of the Follow–Up Notes were Ms. Cilia's honest opinions, and again, she did admit that certain items on the Review contained a list of areas in which Ms. Cilia wanted her to improve. However, contrary to Tri Service's contention (Def.'s 12(M) ¶ 36), Ms. Murawski asserted that she never saw page two of the Follow–Up Notes until litigation in this case began, and did not know what Ms. Cilia thought when she wrote page two. (Def.'s Ex. 15 at 160.) Also, given the uncertain completion date of the Follow–Up Notes, the court is uncertain as to whether the Follow–Up Notes establish Tri Service's dissatisfaction with Ms. Murawski's performance.

Notwithstanding Ms. Murawski's admissions, a genuine issue of material fact is raised as to whether Tri Service felt her performance was not meeting its expectations, because of the events surrounding the December 13 sales meeting. Mr. Valentini's announcement that Ms. Cilia's upcoming maternity leave would mean more work for Ms. Murawski appears to suggest that Ms. Murawski was performing adequately. At least one could infer that Tri Service had enough confidence in her to give her more responsibility. Mr. Valentini's conflicting testimony that he anticipated Ms. Murawski still working at Tri Service in March, but also, that Tri Service considered terminating her, raises an issue of credibility. A reasonable jury could conclude that Ms. Murawski's performance was meeting Tri Service's legitimate expectations if Mr. Valentini anticipated her working

there in March and told her she would have more responsibilities. Therefore, given the evidence above, Ms. Murawski has raised a genuine issue of material fact as to whether her performance met Tri Service's legitimate expectations.

### b. Disability as Reason for Discharge

The plaintiff satisfies the final element of the prima facie case if the evidence reasonably suggests that the employer would not have terminated the plaintiff if she was non-disabled. *Leffel,* 113 F.3d at 794. The *Leffel* court illustrated how a plaintiff can satisfy the fourth element if she had "wide discretion in the performance of her duties one day but is confronted with a laundry list of manufactured criticisms and confining performance standards the next day [which could] raise an inference that . . . the only intervening event was the disclosure that she is disabled." *Id. Leffel* also recognized that a showing of disparate treatment alone is sufficient to satisfy the fourth element of the prima facie case. *Id.*

Ms. Murawski has arguably shown that both disparate treatment and the suspicious timing of her termination suggest that Tri Service would not have terminated her if she was not disabled. Tri Service hired Ms. Johnson, a non-disabled employee, in Ms. Murawski's place immediately after Ms. Murawski's termination. Although Tri Service claims that it entered negotiations with Ms. Johnson months before Ms. Murawski's MS disclosure, Ms. Murawski has raised a genuine issue of material fact as to whether Tri Service actually would have terminated her were it not for her MS. Mr. Valentini initially disapproved of the idea of rehiring Ms. Johnson, which is consistent with Tri Service's policy of not rehiring employees who quit. However, damaging to Tri Service's case is the fact that it ultimately did hire Ms. Johnson, and it did so after learning of Ms. Murawski's MS, just days after the sales meeting during which it was announced that her duties would shortly be increased. Therefore, Ms. Murawski has shown that Tri Service treated her less favorably than a non-disabled individual.

As discussed above, Ms. Murawski's disclosure of her MS just days after Mr. Valentini said she would have more responsibilities, coupled with her termination three weeks later, raises a genuine issue of material fact as to whether Tri Service would have terminated her if she was not disabled. Therefore, the court finds that Ms. Murawski has satisfied the fourth element of the prima facie case. Ms. Murawski, having established a prima facie case, shifts the burden to Tri Service to proffer a legitimate, non-discriminatory reason for her termination.

### 2. Tri Service's Legitimate, Non-discriminatory Reason for Terminating Ms. Murawski

The defendant's burden at this juncture is relatively easy to establish, because it is only a burden of production. *Dale,* 797 F.2d at 463. Tri Service alleges that it terminated Ms. Murawski because of her unsatisfactory performance as an Inside Sales Assistant. Ms. Murawski's termination letter states the reason for her dismissal as "Performance. Unable to perform the daily tasks required by the job." (Def.'s Ex. 22, Ex.A.) Therefore, Tri Service has met its burden, and now Ms. Murawski must show that its reason is a pretext.

### 3. Pretext

Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995). The court will not evaluate whether the employer made a mistake or a bad decision but " 'whether the employer honestly believes in the reasons it offers . . . .' " *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1145 (7th Cir.1994)(quoting *Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 156–57 (7th Cir.1994)). In other words, the court does not "sit as a super-personnel department that reexamines an entity's business decisions." *Dale,* 797 F.2d at 464. If the employee presents evidence showing that the employer's reason for termination is false, the court must determine if a reasonable jury could find that the employer actually discriminated against the employee. *Rand,* 42 F.3d at 1146–47 (citations omitted). Thus, "[the]

issue becomes one of credibility in determining whether the belief is genuinely held." *Bechold v. IGW Sys., Inc.*, 817 F.2d 1282, 1285 (7th Cir.1987).

The court in *Martin v. General Mills, Inc.*, No. 95–C2846, 1996 WL 648721, at *8 (N.D.Ill. Nov.5, 1996) held that the plaintiff did not show even a "hint of pretext" as to the defendant's reasons for his termination. Also, plaintiff did not refute defendant's complaints about his performance—he actually admitted to making many costly errors. *Id.* at *9. Plaintiff also admitted that his supervisor repeatedly corrected him about his performance, and he could not keep up with his workload. *Id.* Finally, the court found that the plaintiff made no effort to show that the defendant did not honestly believe in its reason for terminating him. *Id.*

Unlike the plaintiff in *Martin*, Ms. Murawski has set forth sufficient evidence to at least raise an inference that Tri Service's stated reason for discharging her is a mere pretext. Crucial to this determination is the December 13 meeting where Mr. Valentini made the announcement that Ms. Murawski would have an increased workload. Arguably, if Ms. Murawski's performance was truly deficient and not meeting expectations, Tri Service would not have contemplated entrusting her with even more responsibilities after Ms. Cilia's expected departure. Ms. Murawski admitted to making occasional errors, but she never admitted that those errors were the reason Tri Service terminated her. She also never admitted that her performance was inadequate.

Further, Mr. Valentini admitted that he anticipated Ms. Murawski working at Tri Service in March of 1997. Interestingly, he testified that her termination had already been planned months before, but he did not want to make it "public knowledge" at the meeting that Tri Service considered terminating her. (Pl.'s Ex. L at 116.) He claimed that he did not want anyone at the meeting, including Ms. Murawski, to know Tri Service's alleged plans. (Pl.'s Ex. L at 116.) Mr. Valentini also testified that Ms. Murawski was not fired immediately in November, when Ms. Cilia claimed her performance was inadequate, because they did not want to fire her "around the holidays." (Pl.'s Ex. L at 112.) Mr. Valentini also stated that Tri Service did not have a replacement for her in November, which is another reason she was not fired immediately. (Pl.'s Ex. L at 112.) In November, however, Tri Service knew that Ms. Johnson had expressed an interest in returning. (Pl.'s Ex. L at 112–13.)

This court finds Tri Service's various reasons unconvincing, given both Mr. Valentini's contradictory testimony and the suspicious timing of events surrounding Ms. Murawski's disclosure of her MS two days after the meeting. The court also notes that the "holidays" were technically over by January 10, so Tri Service could have terminated her before this date if the "holidays" were really a consideration. Given the conflicting testimony, a credibility issue is raised, and a material fact exists as to whether Tri Service honestly believes that it terminated Ms. Murawski because of her poor performance.

Also undermining Tri Service's stated reason is the testimony given by Mr. Day, Ms. Johnson and Mr. Valentini regarding the content of the Review. Thus, Mr. Day thought the review was merely an outline of what Ms. Cilia expected of Ms. Murawski and not an evaluation, (*see* n. 2), and both Mr. Valentini and Ms. Johnson testified that they would not have gathered from the review that Ms. Murawski was about to be terminated. (Pl.'s Ex. F at 201–02; Pl.'s Ex. L at 83–84.) Mr. Day's testimony that the Review was "just an outline" of Ms. Cilia's expectations supports Ms. Murawski's contention that the Review was only a "reiteration" of her job duties and not a criticism of her performance. Further, Ms. Johnson's and Mr. Valentini's testimony concerning the Review does not support Tri Service's assertion that the Review documents Ms. Murawski's inadequate performance.

The testimony of these witnesses, especially Mr. Valentini, whom Ms. Cilia consulted regarding terminating Ms. Murawski, raises a material issue as to whether Tri Service terminated Ms. Murawski because she was not meeting Tri Service's legitimate expectations. Although a record of inadequate performance is not necessary, without such evidence here, Ms. Murawski has made

a showing of possible pretext given the above mentioned evidence, including Ms. Cilia reassuring her in August that she was a "keeper." In addition, only a credibility determination can resolve the questionable date of the Follow–Up Notes, as well as the issue raised by Tri Service that the Notes were not created for purposes of litigation. (Def.'s Reply 15 at 7.) Ms. Cilia offers contradictory testimony as to when she actually wrote the various entries, and whether she added entries after Ms. Murawski's termination in anticipation of litigation. (Pl.'s 12(N) ¶ 24; Def's 12(N) Reply ¶ 24.)

Tri Service offers no specific evidence that Ms. Murawski was not performing to expectations at the time of her termination three weeks after her MS disclosure. Ms. Cilia denies asking Ms. Murawski whether her MS would affect her job or that she told Ms. Murawski that Tri Service feared she could not handle the added responsibilities once Ms. Cilia left for maternity leave. However, if proven at trial, the trier of fact could conclude that Tri Service's reason for terminating Ms. Murawski is a pretext. If Tri Service feared that Ms. Murawski's MS would prevent her from taking on the increased responsibilities, as announced at the sales meeting, and therefore terminated her, the reason for termination is discriminatory. The trier of fact must decide the credibility of the witnesses, because this Court cannot resolve such matters.

Further, even if Tri Service honestly believed Ms. Murawski's mistakes were grounds for termination, a reasonable jury could conclude that Ms. Murawski no longer made such intolerable mistakes by the time the December 13 sales meeting took place. Otherwise, Tri Service would not have made its apparent showing of confidence in her by announcing that she would basically take over Ms. Cilia's work in her absence. The trier of fact could find that the intervening event of Ms. Murawski's MS disclosure, after the meeting, explains Tri Service's sudden change of heart about entrusting her with an increased workload. Therefore, Ms. Muraw-

ski has sufficiently rebutted Tri Service's proffered reason for termination and shown that pretext may exist.

Seemingly fatal to Ms. Murawski's charge of discrimination is her admitting that the reasons given by Tri Service are its honest belief. *Vanasco v. National Louis Univ.*, 137 F.3d 962, 966 (7th Cir.1998). Thus, Ms. Murawski did admit to making some mistakes and that she had no reason to doubt that Ms. Cilia honestly believed the various matters she brought up to her. However, Ms. Murawski claimed that Ms. Cilia was just reiterating her job duties—not criticizing her performance. Contrary to Tri Service's contention, Ms. Murawski never admits in the record that her performance was inadequate or that she thought Tri Service's reason for *terminating* her was its honest belief.

Further, the Court was unable to locate numerous pages of Ms. Murawski's deposition which purportedly support Tri Service's argument, as well as certain other arguments it sets forth. This Court will not scour the entire record in search of missing pages.[7] For example, Tri Service claims "Murawski admitted to making several of the mistakes which served as the reasons for termination and admits that Ms. Cilia brought them to her attention. (Murawski Dep. pp. 89, 121.)" (Def.'s Reply at 5.) Surprisingly, page 121 is missing, and page 89 only contains testimony by Ms. Murawski admitting that she made some errors. (Def.'s Supp. Ex. A at 87.) Nowhere on page 89 does she admit, as Tri Service wishes the Court to accept, that those mistakes were the reason for her termination or that Ms. Cilia brought them to her attention.

Def.'s 12(N) Reply contains numerous citations to page 121 as well as to pages 80, 81, 92, 158, 162, and 191 of Ms. Murawski's deposition. Tri Service's brief also cites to certain of the missing pages. For instance, page 162 of Ms. Murawski's deposition allegedly contains an admission by Ms. Murawski that she did not believe the Review was

---

7. For example, the Court was unsuccessful in locating pages 6 and 9 of Mr. Day's testimony. These pages allegedly show Mr. Day testifying about Ms. Murawski's poor performance. (Def.'s Reply at 8, fn.1.) The Court could only find page 7 of Mr. Day's testimony, but alone, page 7 is inadequate to support the claim that Mr. Day complained about Ms. Murawski's performance.

 

"doctored for purposes of litigation. (Murawski Dep. p. 162.)" (Def.'s Reply at 7.) However, page 162 is inexplicably missing. The Supplement to Def.'s 12(N) Resp. does not contain these pages either. The Court is perplexed as to the omission of these, seemingly crucial pages. Finally, Tri Service's Memorandum in Support of Summary Judgment barely contains any citations to the record at all. The Court will not scour the record and strongly cautions that Tri Service provide all referenced materials in the future, which will save the Court much time in trying to determine the facts in the case.

Given the evidence in the record, nothing supports Tri Service's argument that Ms. Murawski admitted that her performance was inadequate or that inadequate performance was the reason for her termination. Further, the conflicting testimony as to what Tri Service told Ms. Murawski was the reason for her discharge is an issue for the trier of fact to resolve. Also undermining Tri Service's arguments for summary judgment is the testimony regarding the content of the Review and Follow–Up Notes and whether it criticized Ms. Murawski's work or merely set forth aspects of her duties. Further, the court could not find any evidence to support the claim that Ms. Murawski admitted the Review and Follow-up notes were not doctored in anticipation of this suit, and therefore the date Ms. Cilia created the notes is an issue for trial, as well.

Finally, a suggestion of pretext exists, because Tri Service hired a non-disabled individual in Ms. Murawski's place. Especially suspect are the circumstances surrounding Ms. Johnson's hiring. Although Tri Service alleges that it had planned to rehire Ms. Johnson before it knew of Ms. Murawski's MS, Ms. Murawski has raised sufficient evidence to rebut Tri Service's reason and show pretext. Ms. Murawski has sufficiently demonstrated genuine issues of material fact as to her discriminatory discharge claim. As mentioned previously, the court need not proceed at this point to discuss Count II of Ms. Murawski's amended complaint.

### ORDER
**IT IS THEREFORE ORDERED** that:

Tri Service's Motion for Summary Judgment on Counts I and II be, and the same hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that:

Ms. Murawski's Motion for Summary Judgment on Count II be, and the same hereby is, **DENIED.**